THE CONTINENTAL INSURANCE COMPANY, Appellant, *v.* THE ÆTNA INSURANCE COMPANY of Hartford, Conn., Respondent.

Where two insurance companies contract with each other that one shall share the loss with the other as to every risk exceeding a sum specified, the contract applies to all risks which have been written for a sum exceeding the sum so specified.

Defendant contracted to reinsure the plaintiff "to the extent of one-half the amount of each and every risk which equals or exceeds in value the sum of $15,000," insured by plaintiff under certain specified open policies of marine insurance issued by it. By these policies plaintiff's liability in case of loss was limited to the actual market value of the goods at the date of the loss. Plaintiff had insured under said policies, three cargoes, the amount of insurance specified in each case exceeding $15,000 Plaintiff in each case treated the risk as reinsurance, entered the cargo in the book referred to in defendant's policy, for one-half the amount as insured by the shippers, and reported the same to defendant Two of the cargoes so insured were lost, and the other was damaged, by perils within the policies. In each case the amount of loss as adjusted, was less than $15,000. In an action upon the contract of reinsurance, *held,* that the word "risk" therein, referred to the entered or written value of the cargo, not simply such risks as after a loss and upon adjustment, were found to equal or exceed the sum named ; that it was the intent of defendant's contract that its obligation should be complete and perfect when the goods were entered for insurance, not that the existence of any contract whatever should be left to depend upon the extent of the loss; and so, that defendant was liable.

*Arnold* v. *Pac. Mut. Ins. Co.* (78 N. Y. 7), distinguished.
*Con Ins. Co.* v. *Ætna Ins. Co.* (62 Hun, 554), reversed.

(Argued March 6, 1893; decided April 11, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1891, which overruled plaintiff's exceptions and directed judgment for defendant upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Elihu Root* for appellant. The true amounts of risk in this case were the amounts entered in the books referred to

in the Continental Company's open policies, in pursuance of the provisions of those policies. (Laws of 1849, chap. 308, § 13; Laws of 1853, chap. 463, § 12; Laws of 1880, chap. 110, § 1; *Jackson* v. *S. P., etc., Ins. Co.*, 99 N. Y. 129; *S. M. Ins. Co.* v. *O. Ins. Co.*, 107 U. S. 504.) The General Term agrees with the plaintiff that the word "risk" does not mean "loss," but holds that its true meaning is *actual* and not *entered* value of cargo; this is erroneous. (*M. Ins. Co.* v. *O. Ins. Co.*, 107 U. S. 485; *N. Y. B. F. Ins. Co.* v. *N. Y. F. Ins. Co.*, 17 Wend. 363, 364; *Jackson* v. *S. P. F. & M. Ins. Co.*, 99 N. Y. 129; *M. S. Ins. Co.* v. *Hone*, 2 id. 238; *Cohn* v. *C. L. Ins. Co.*, 69 id. 305.) It would have been competent at the trial for the plaintiff to show by experts, that by the usage of underwriters, "risk" means the apparent risk shown by the amount entered in the contract of insurance, and that the amount of risk is always measured by the amount fixed in the contract. (Jones on Com. Cont. §§ 54, 64, 67; *Newhall* v. *Appleton*, 114 N. Y. 140; *Smith* v. *Clews*, Id. 190; *Nelson* v. *Ins. Co.*, 71 id. 453; *Coit* v. *Ins. Co.*, 7 Johns. 385; *Astor* v. *Ins. Co.*, 7 Cow. 202; *Child* v. *Ins. Co.*, 3 Sandf. 26.)

*Joseph A. Shoudy* for respondent. The entry in the pass book had nothing to do with the question of liability. A loss may occur and the liability of the company become fixed before any indorsement is made of the risk or the risk is in any way reported. (*Arnold* v. *P. M. Ins. Co.*, 78 N. Y. 712.)

O'BRIEN, J. The plaintiff sought to recover upon an open policy or contract of re-insurance made by defendant and two other companies in which they assumed certain obligations that are now in dispute, and bound themselves "severally and not jointly, nor the one for the other, to the assured."

The plaintiff had issued in each case an open policy of insurance to Twombly & Co., The N. Y. Lighterage & Transportation Company and John H. Starin, on account of whom it may concern, bearing date respectively September 1, 1881,

February 1, 1883, and December 6, 1882, "Loss, if any, payable to assured upon all kinds of lawful goods and merchandise laden on board the good lighter or lighters, as indorsed hereon, or in a book kept for that purpose, for the several amounts, and on the goods and merchandise as specified in the said indorsement, the said assured agreeing to enter for insurance all goods carried by them at the full value thereof, and to report the same to this company on Monday of each week (or at such times as they may require).

"At and from point or points in the harbor of New York as far south as the Narrows, and the inland waters of New Jersey, adjacent and tributary thereto, and on the North river as far as Piermont, and the East river as far as Throgg's Neck.   *   *   *

" The said loss or damage to be estimated according to the true and actual cash value on the day of the disaster."

On March 17, 1885, merchandise on board the lighter " Chase " was indorsed by Twombly & Co. for the amount to be insured of $16,000 in the book referred to in their policy, and the same was reported by them to the plaintiff at the time required. The cargo was lost by perils covered by the policy, and the loss adjusted upon the basis of the actual cash value of the cargo on the day of the disaster in the sum of $12,058.48.

On the 19th of March, 1885, merchandise on board the barge *James W. Eaton* was indorsed by the N. Y. Lighterage and Transportation Company, for the amount to be insured of $15,900, in the book referred to in their policy, and the same was reported by it to the plaintiff at the time required and in conformity with the contract. The cargo was lost by perils within the policy, and the amount adjusted upon the actual cash value of the cargo on the date of the disaster at $12,451.26. On October 7, 1885, goods on board the lighter *Warren* were indorsed by John H. Starin in the book referred to in the policy, for the amount to be insured of $16,000, and the same duly reported to the plaintiff. There was a loss upon the goods included in this cargo which was subsequently

adjusted at $710.  It is not questioned that the plaintiff in each of these cases had made with the shippers valid contracts of insurance and was liable for the loss as adjusted. The plaintiff claims that these losses were covered by the contract of re-insurance with the defendant and the other two companies, bearing date January 1, 1885, and by which they agreed to re-insure the plaintiff on account of whom it may concern, loss, if any, payable to them *pro rata*, "Upon all kinds of lawful goods and merchandise laden on board the good lighter or lighters, as indorsed hereon, or in a book kept for that purpose, for the several amounts, and on the goods and merchandise as specified in the said indorsement, the said assured agreeing to enter for insurance all goods at the full value thereof, and to report the same to the assurers on Monday of each week (or at such times as they may require).

"The said loss or damage to be estimated according to the true and actual cash value on the day of the disaster."

The true meaning and construction of the following indorsement made upon this policy and bearing date February 2, 1885, raises the only question presented by this appeal.

"On and after this date this policy covers the Continental Insurance Company as re-insurance to the extent of one-half of the amount of each and every risk which equals or exceeds in value the sum of $15,000, and which the said Continental Insurance Company may have on cargo of any one barge or lighter and insured by them under their open policies issued to the following-named persons, viz.: Twombly and Company, John H. Starin, New York Lighterage and Transportation Company.  *  *  *

"On cargoes of the value of $50,000 and upwards, this policy is to cover the excess of $25,000, not exceeding the sum of $50,000 on any one cargo.

"JOHN NEWMAN, *Agent.*"

The defendant's contention is, that as the value of the several cargoes which were lost proved, in each case, upon the adjustment, to be less than $15,000, the loss is not covered by

the contract of re-insurance, and this view has been sanctioned by the courts below. The plaintiff, on the other hand, claims that as the entered or written value of the cargo, in each case, exceeded that sum, the defendant's contract covers the plaintiff's risk, and it is bound to make the plaintiff good for that part of the loss stipulated for in the contract of re-insurance. The plaintiff in each case treated the risk as re-insured, and it indorsed in the book referred to in defendant's policy, the cargo for one-half the amount entered by the shippers, and reported the same to the defendant. The controversy, therefore, turns upon the meaning of the word " *risk,*" as used by the parties in the above indorsement, which is the material part of the contract. In ascertaining the sense in which that word was used, the intention of the parties must govern, and the precise contract relations that each occupied to the other becomes important. The plaintiff, by its open policy issued to the carriers or shippers named, insured goods, the nature, character and value of which were not known, and could not be known, when the policy was issued, but the kind and value thereof were to be particularly specified thereafter, from time to time, as occasion required, by ·indorsement, or in a book kept for that purpose, to be reported to the ·plaintiff once in each week, as required. When the goods were laden, and certainly when so entered at their full value, the contract was completed in every case, and the liability of the plaintiff began. When the goods and their value were reported to the plaintiff, it could then know the character and extent of its risk under the policy, and the true value of the goods at the time of any disaster was to be the basis of its liability. The defendant, and the two other re-insuring companies, agreed with the plaintiff to share one-half its liability for a certain class of those risks. That class was to be specified and defined, not by the result of a disaster, but by indorsement on the policy of re-insurance which the. plaintiff held. Accordingly, the parties limited the operation of the contract to " *each and every risk which equals or exceeds in value* $15,000." The defendant's liability was not to attach to any other risks

that the plaintiff might take.  It must be presumed from the nature of the business and the purpose of the contract that both parties intended to define the class of risks to be covered by the re-insurance, in such language as to enable each to know when the entry was reported, whether the risk was re-insured or not.  It was important for the plaintiff to know, when the report was made, in each case, whether it had re-insurance or not, and it was equally important for the defendant and its co-contractors to know, as risks were reported, whether or not they had assumed any liability with respect to them. If the parties by the use of the words " *risk* which equals or exceeds in value $15,000," meant only such risks as, after loss, and upon adjustment, equaled or exceeded that amount, then, it is obvious that they could never know whether there was re-insurance or not, save in the very few exceptional cases where there should be a loss, and it was finally adjusted at figures, within the limit specified; whereas if they meant the entered value of the cargo or the sum written, both parties would know precisely where they stood.  It must be admitted that the entered value is the basis for the computation of the premium to be paid by the carriers or shippers of the goods to the plaintiff for the risk assumed.  It is equally clear that the re-insuring companies are entitled to demand or share premiums with the plaintiff on the same basis.  The defendant's position then must be that while it is entitled to demand and receive compensation for re-insurance, in every case where the entered value of the cargo equals or exceeds $15,000, it is nevertheless shielded from any liability unless an adjusted loss or the actual value equals or exceeds that sum.  An interpretation of the contract which would produce such a result could scarcely be called fair, and there is a strong presumption that it is contrary to what was intended by the parties. The word *risk* in its ordinary and popular use, with reference to insurance, describes the liability assumed as specified on the face of the policy, and, in that sense, it is used in numerous statutes of this state regulating insurance companies, and in some adjudged cases.  (Century Dict. vol. 5, p. 5194 ; *Pitcher*

v. *Hennessey*, 48 N. Y. 415 ; *Jackson* v. *St. Paul, etc., Ins. Co.*, 99 id. 129 ; *Sun Mut. Ins. Co.* v. *Ocean Ins. Co.*, 107 U. S. 504 ; Laws 1849, ch. 308, § 13 ; Laws 1853, ch. 463, § 12 ; Laws 1880, ch. 110, § 1 : Laws 1879, ch. 489, § 1 ; Laws 1874, ch. 189, § 8.)

When the parties spoke of risks that equaled or exceeded $15,000, they meant to designate such risks as the plaintiff might have upon goods, upon the lighters named, that were entered or written for that amount or more, and they did not intend that the existence of a contract of re-insurance was to depend upon the constantly fluctuating value of the goods, the notions of an adjuster as to value, or the judgment of a court or jury. They intended that the obligations of the defendant should be complete and perfect when the goods were entered for insurance, and not that the existence of any contract whatever should be left to depend upon the extent of the loss or the actual value, after the disaster, against the possibility of which the plaintiff was seeking to protect itself. The intention might have been expressed with more particularity and with greater precision and made so plain that no controversy as to the meaning could ever arise. But we know that the multifarious transactions of business men are not always preceded by carefully and accurately measuring and weighing their words, nor are their ordinary agreements or contracts always drawn by persons skilled in the use of language. In the vast majority of such cases no controversy ever arises, and in the exceptional cases, in which courts are called upon to settle the dispute, they should give to such instruments a reasonable and sensible construction, and which appears to conform the nearest to the justice of the case and the end which the parties sought to accomplish, but which, from inadvertence or the poverty of language, they have failed to express fully and accurately. In this case the contract is clear enough, except that the parties, in defining the class of risks to be covered by the re-insurance, used an expression which perhaps left some room for controversy as to whether the entered or actual value of the cargo was intended. But we think that the real inten-

tion of the parties is easily ascertained from the nature of the transaction, the language employed and the object which they evidently had in view. The construction which we are disposed to put upon the indorsement attributes to the parties a design to make a contract certain in its terms and just and reasonable in its operation, while the other view introduces into the contract an element of great uncertainty, and would operate unfairly in practice. When the language of the parties is not open to construction, the contract must be enforced however harshly it may operate, but when it is, then the considerations to which allusion has been made, are entitled to great weight. The plaintiff, when the goods were entered, became liable upon its open policy to pay the full sum written in case of loss should the value of the goods, on the day of the disaster, prove to equal or exceed that sum. The risk for which it might be made liable was, therefore, the entered value. The circumstance that from fluctuations in value or other causes, it was possible that the liability assumed might be less, does not prove that the sum ultimately paid was the real risk referred to. The sum which the plaintiff *might* ultimately become liable to pay was the risk to which the parties referred in the contract of re-insurance. That was the risk which the plaintiff took by its open policy, and to that class of risks, written for the sum specified, the contract of re-insurance applied. When two insurance companies contract with each other that one shall share the loss with the other, as to all risks exceeding a certain sum, the contract applies to all risks that have been written for the sum so specified. The obligations of the re-insuring company can be determined without reference to the loss, and in this case had no loss occurred, the class of risks assumed by the defendant could be determined from the language used, and from the nature of the transaction. In that case a construction that would make the defendant's liability depend, not upon the plaintiff's risk, as expressed upon the face of its policy, but upon the market value of the goods as shown, subsequently, in case of loss would render it impossible to tell what risks, if

any, were re-insured, and would be rejected as contrary to the intention of the parties. The contract cannot be construed one way after a loss, and another and different way before, or one way for the purpose of collecting premiums and another way for the purpose of determining liability. When the question arises, as it does in this case, whether the re-insurance ever attached or the contract ever came into operation, it is reasonable and just to hold that the value referred to in the indorsement was the entered and not the actual value. The defendant's contract attached, if at all, when the goods were laden upon the lighters, and as it was impossible then, or at least extremely inconvenient, to determine what their actual value was, the parties must have intended that the obligation, under the agreement of re-insurance, should derive its life and validity from the entered value of the cargo. In the opinion of the learned General Term much importance is given to the point that the construction which the plaintiff contends for would create liability on the part of the re-insuring companies upon risks where the shippers or carriers had entered the property for insurance at an excessive or exaggerated value. In all contracts of insurance there is, of course, a possibility of fraud and dishonesty, but that contingency is not controlling in the process of ascertaining what the parties intended by the language used. While that danger is always present in such contracts, it seems to us to be as completely eliminated from that under consideration by the prescribed regulations and the real interest of all parties as it ever can be in human transactions. The shippers were bound by their contract with the plaintiff to enter the goods for insurance upon the book and report the same at the true value. If they were entered at a valuation grossly and manifestly excessive it would constitute a fraud that might vitiate the policy. Moreover, it is difficult to conjecture any possible motive for a shipper or carrier of goods to enter them for insurance at an excessive value, and pay premiums on such value, when, by his contract, he was limited, in case of loss, to the recovery of the actual market value at the date of the disaster. Indeed,

the temptation would be, with carriers such as these parties were, to save premiums by entering the goods for a less sum than the true value, and doubtless it was to guard against this that the plaintiff bound them to enter the property for insurance at its full value. The learned counsel for the defendant insists that the construction of the contract, which we have here indicated as the proper one, is contrary to the decision of this court in the case of *Arnold* v. *Pacific Mut. Ins. Co.* (78 N. Y. 7). That was an action by the owner or consignee upon an open policy of marine insurance, to recover for goods lost. It was held that an honest mistake in reporting the cargo, and the route upon which the vessel was to sail, to the assured, did not vitiate the policy or furnish a defense against the loss. There was another question in that case growing out of a claim by the assurers that there was a deviation from or unnecessary delay in the voyage, to which the contract applied, which, of course, has no application to the case at bar. The learned counsel is doubtless correct in his position that if the goods were lost after they were laden, but before entry in the book or report, the liability of the plaintiff to the shippers attached. But it does not follow from that, we think, that the word *risk*, as used in the contract, refers to the actual and not the entered value. The plaintiff's contract with the shippers covered all goods laden upon the lighters specified, without regard to value. The defendant's contract with the plaintiff covered only such risks as the plaintiff had upon the same goods when the value amounted to a sum which was specified, and thus the liability of the defendant, unlike that of the plaintiff, was limited to cargoes, the value of which equaled or exceeded a specified sum. On such cargoes, the liability of the defendant also attached when the goods were laden, though it could not be known until the entry was made, and if in the meantime a loss occurred, a subsequent entry and report in good faith and without fraud or collusion would be necessary to perfect the right of action. The entered value, of course, is not conclusive either upon the plaintiff or the defendant as to the extent of the liability after loss. That is

measured and governed by the actual market value of the goods on the day of the disaster. The importance of the entered value is that it clearly defines and separates the risks taken by the plaintiff, which are covered by the contract of reinsurance, from those which are not. That was a certain and convenient way to classify them, and that, we think, was the standard which the parties adopted to determine the value of the risks intended to be covered.

The judgment should, therefore, be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.