This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 79
Karine Gevorkyan, et al.,
          Appellants,
        v.
Ira Judelson,
          Respondent.



          Andrew Lavoott Bluestone, for appellants.
          Jonathan Svetkey, for respondent.
          Eric Del Pozo, for amicus curiae New York State Department of Financial Services.
          Brooklyn Defender Services et al.; Legal Aid Society, amici curiae.



DiFIORE, Chief Judge:

          The United States Court of Appeals for the Second Circuit, by certified question, has asked us whether an entity engaged in the bail bond business may retain the premium paid on a criminal defendant's behalf when bail is denied and the

- 1 -

defendant is never released from custody.  Inasmuch as the
Insurance Law provides that such an entity does not earn a
premium for a bail bond if a court refuses to accept the bond
following a bail source hearing, we answer in the negative.

I.

In 2011, Arthur Bogoraz was indicted on state law fraud
charges and bail was fixed at $2 million.  Plaintiffs, the wife
and family friends of Bogoraz, contacted defendant Ira Judelson,
a licensed bail bond agent affiliated with the International
Fidelity Insurance Company (International Fidelity), a bail bond
surety.  Judelson, on behalf of International Fidelity, entered
into an indemnity agreement with plaintiffs whereby International
Fidelity agreed to underwrite a bail bond to secure Bogoraz's
release from custody in exchange for a premium of $120,560.
Plaintiffs promised to indemnify the bond and provide collateral.
Shortly thereafter, plaintiffs paid the premium to Judelson, in
trust for International Fidelity.  Judelson then posted the bail
bond with the court in compliance with Criminal Procedure Law §
520.20 (1), which provides:

> "[W]hen a bail bond is to be posted in
> satisfaction of bail, the obligor or obligors
> must submit to the court a bail bond in the
> amount fixed, executed in the form prescribed
> in subdivision two, accompanied by a
> justifying affidavit of each obligor,
> executed in the form prescribed in
> subdivision four."

The court thereafter ordered a hearing under CPL
520.30, which provides:

"Following the posting of a bail bond and the justifying affidavit or affidavits . . . , the court may conduct an inquiry for the purpose of determining the reliability of the obligors . . . , the value and sufficiency of any security offered, and whether any feature of the undertaking contravenes public policy . . . At the conclusion of the inquiry, the court must issue an order either approving or disapproving the bail."

The court denied the bail bond at the hearing and the Appellate Division dismissed a writ of habeas corpus on Bogoraz's behalf (People ex rel. Aidala v Warden, Rikers Is. Corr. Facility, 100 AD3d 667 [2d Dept 2012], lv denied 20 NY3d 858 [2013]). Bogoraz never was released and, when plaintiffs requested the return of the $120,560 premium, Judelson refused.

Plaintiffs sued Judelson in the United States District Court for the Southern District of New York, asserting diversity jurisdiction. The complaint alleged breach of contract, unjust enrichment, and conversion. After a bench trial, the District Court found that the indemnity agreement permitted Judelson to retain the premium (US Dist Ct, SD NY, 13 Civ 8383, Berman, J., 2015). The District Court considered CPL 520.20 and 520.30, but concluded that "New York State practices and statutory guidance are not dispositive" (id.).

On appeal, the Second Circuit stated that there is a "dearth" of New York legal authority on this subject and that the relevant New York Criminal Procedure Law is "'not dispositive'" (841 F3d 584, 587-588 [2d Cir 2016]). The court determined that New York Insurance Law § 6804 (a), the provision relating to bail

bond compensation, "controls the <u>amount</u> of the premium a bail bondsman may charge, [yet] nothing in that Article sheds light on when that premium is actually earned" (<u>id.</u> at 587 [emphasis in original]). The court concluded that New York State's "interest in regulating the premiums to be received by bail bond agents is clear" and that the New York Court of Appeals, rather than the federal courts, should strike the balance between the State's interests in "secur[ing] compensation for bail bond agents" and "protect[ing] defendants and their families at a critical juncture in criminal proceedings" (<u>id.</u> at 589). Accordingly, the Second Circuit certified the following question to us:

> "Whether an entity engaged in the 'bail business,' as defined in [Insurance Law] § 6801 (a) (1), may retain its 'premium or compensation,' as described in [Insurance Law] § 6804 (a), where a bond posted pursuant to [CPL] § 520.20 is denied at a bail-sufficiency hearing conducted pursuant to [CPL] § 520.30, and the criminal defendant that is the subject of the bond is never admitted to bail" (<u>id.</u>).

II.

We begin with Insurance Law article 68 -- the statutory provisions regulating the bail bond industry, including the premium payable to a bail bond entity. An entity is "deemed to be doing a bail business" when, on behalf of another, it "deposit[s] money or property as bail or <u>execute[s] as surety any bail bond</u>" in more than two unrelated cases within a period of one month (Insurance Law § 6801 [a] [1] [emphasis added]). A "surety" is someone other than the principal of the bond -- that

is, other than the criminal defendant -- "who executes a bail bond on behalf of a principal and thereby assumes the undertaking described therein" (CPL 500.10 [11], [12]).  For purposes of this certified question, we will limit our response to the "premium or compensation" due to bail bond sureties.[1]

The premium payable to a bail bond surety is determined based on a sliding scale percentage not to exceed ten percent of the bail bond amount (Insurance Law § 6804 [a]).  The surety may not "charge or receive, directly or indirectly, any greater compensation for making a deposit for bail or giving bail" (id. at § 6804 [b]).  Importantly, "[t]he premium or compensation" is "for giving bail bond or depositing money or property as bail" (id. at § 6804 [a]).  In other words, the surety may receive a premium only upon "giving bail bond."

The Insurance Law does not expressly define "give bail bond" -- or "give bail," as used in Insurance Law § 6804 (b). However, Insurance Law § 6801 (a) (1) equates having "given such bail" with having "execute[d] as surety any bail bond."  In turn, Insurance Law § 6803 (b) provides that the court

> "concerned in the matter may examine under
> oath any insurer . . . doing a bail business
> . . . or the officer or agent of any such

_____

[1] This action was brought against the bail bond agent, Ira Judelson, rather than the bail bond surety, International Fidelity.  We confine our decision herein to the question of the right of the surety to retain a premium; we do not opine on New York law with respect to the compensation structure between the surety and the bail bond agent.

insurer . . . <u>proposing to execute</u> a bail
bond . . . as to the indemnity, if any, . . .
and as to the fee charged, if any, for the
giving of such bond.  The court . . . may
refuse to accept such bond . . . if satisfied
that any portion of such security has been
feloniously obtained by the defendant, or
that the provisions of this or any other
section of law have been violated, or that
the person or persons indemnifying such
insurer . . . shall have within a period of
one month prior thereto given indemnification
or security for like purpose in more than two
cases not arising out of the same transaction
and that such person is not duly licensed by
the superintendent in accordance with the
provisions of this chapter" (emphasis added).

Section 6803 (b) explains that a court may "refuse to accept such

bond" under certain circumstances, including if the source of the

security for the bond was "feloniously obtained."  This inquiry

is known as a bail source hearing and in criminal actions, the

procedure is governed by the corresponding statute CPL 520.30.[2]

Insurance Law § 6803 (b) authorizes the court to examine a surety

"<u>proposing</u> to execute a bail bond."  In other words, if the court

"refuse[s] to accept [the] bond," the bond remains only proposed,

and not fully executed within the meaning of the Insurance Law

(Insurance Law §§ 6801 [a] [1]; 6803 [b]).  Because "executing" a

bail bond is equated with having "given bail" in section 6801 (a)

(1), that provision and section 6803 (b), read together,

---

[2] The Criminal Procedure Law governs the procedure in
criminal actions (see <u>Matter of Santangello v People</u>, 38 NY2d
536, 538 [1976]).  It does not regulate the bail bond business,
such as the amount of compensation or when that compensation is
earned.  These matters are exclusively under the purview of
Insurance Law article 68.

establish that bail bond has not been given if the court refuses
to accept the bond after the bail source hearing.  Thus, a bail
bond surety may not retain a premium when the court refuses to
accept the bond because no premium is earned under section 6804
(a) until a bail bond is given, and the bond cannot be deemed
given within the meaning of the Insurance Law if it is not
accepted by the court.[3]

  This interpretation comports with the understanding of
the phrase "giving bail" at the time that the forerunner of
Insurance Law article 68 -- Code of Criminal Procedure § 554-b --
was enacted.  "When the Legislature has failed to assign
definition to a statutory term, the courts will generally
construe that term according to 'its ordinary and accepted

---

[3] We acknowledge that the Criminal Procedure Law uses the
phrase "execut[ing] a bail bond" to mean signing the bail bond
undertaking and supporting affidavits as part of the process of
"post[ing]" a bail bond (CPL 520.20 [1] [a]).  The CPL 520.30
hearing, in turn, occurs "[f]ollowing the posting of a bail bond"
(CPL 520.30 [1]).  This different usage of the word "execute"
does not, however, change our understanding of Insurance Law §
6803 (a).  There is no indication that the legislature intended
for the Criminal Procedure Law bail bond provisions to modify how
former Code of Criminal Procedure § 554-b, the predecessor of
Insurance Law article 68, regulated a surety's premium.  Rather,
the legislature intended to preserve section 554-b, after
determining that it was "of continuing utility or validity" and
should be moved into the Insurance Law "lest [it] fall when the
repeal of the Code of Criminal Procedure [became] effective" in
1971 (Senate Mem in Support, Bill Jacket, L 1971, ch 545 at 4).
It follows that the particular matters related to sureties,
including the premium that may be charged, survived the enactment
of the Criminal Procedure Law.  Thus, it is article 68's use of
the word "execute" that governs our analysis.

meaning as it was understood at the time'" (People v Eulo, 63

NY2d 341, 354 [1984] [citation omitted]).  In the 1920s, when the

legislature enacted section 554-b, our decisions consistently

used the phrase "giving bail" to encompass the release of the

criminal defendant (see e.g. People v Buzzi, 238 NY 390, 393

[1924] ["The defendant . . . was released after obtaining a writ

of habeas corpus and upon giving bail"]; Netograph Mfg. Co. v

Scrugham, 197 NY 377, 381 [1910] ["When bail is given, the

principal is regarded as delivered into the custody of his

sureties" (internal citations and quotation marks omitted)];

Stono v Weiller, 128 NY 655, 656 [1891] ["(T)he release (of the

defendant) was executed after bail had been given"]).[4]

Judelson argues that we should instead equate "giving

bail bond" to "posting bail bond" as that term is used in the

Criminal Procedure Law.  CPL 500.10 defines "post bail" to mean

---

[4] The phrase "giving bail" is used similarly in other bail
bond statutes.  For example, CPL 570.36 permits an out-of-state
court to commit a criminal defendant to the county jail "unless
the accused gives bail as provided in [CPL 570.38]."  CPL 570.38,
in turn, states that certain New York courts "may admit the
person arrested to bail by bond or undertaking, with sufficient
sureties, and in such sum as [the court] deems proper . . ."
(emphasis added).  As used in these provisions, the term "giving
bail" captures the bail process up to and including the
principal's release -- i.e., until the principal is "admitted" to
bail.  Likewise, CPLR 7010 (b), which provides habeas corpus
review of excessive bail, states that, when a court is required
to direct a final judgment admitting a person to bail, "[s]uch
judgment must fix the amount of bail, specify the time and place
at which the person detained is required to appear, and order his
release upon bail being given in accordance with the criminal
procedure law" (emphasis added).

"to deposit bail in the amount and form fixed by the court, with the court" (CPL 500.10 [8]).  This argument is not persuasive in light of Insurance Law article 68's underlying purpose (see Cassano v Cassano, 85 NY2d 649, 655 [1995] ["(L)egislative purpose, not linguistic perfection, guides our determination" and thus "we must seek to give meaning to the (ambiguous) term . . . in the context of the statute's over-all objective"]).  The legislature enacted the predecessor statute "because of the many abuses that have arisen in the administration of the criminal law" committed by "professional bondsmen" (Approval Mem of Assoc. of the Bar of the City of New York, Bill Jacket, L 1922, ch 303 at 3).  These abuses, as related to compensation, include "charges [that] have been exorbitant" (Letter from St Ins Dept, Mar. 22, 1922 at 1, Bill Jacket, L 1922, ch 303).  Indeed, in support of the statute, the Chief City Magistrate of New York City expressed concern about how bondsmen, in some cases, had been taking advantage of criminal defendants as to the compensation charged (see Letter from City Magistrates Court, Mar. 21, 1922 at 2, Bill Jacket, L 1922, ch 303).  To permit a surety to retain a premium when the criminal defendant is not admitted to bail is inconsistent with the legislature's objectives in regulating bail bond compensation.

Further, as discussed above, the bail bond statutes empower a court to examine a posted bail bond and determine whether it should be approved or rejected (see CPL 520.30 [1],

[3]; Insurance Law § 6803 [b]).  The court may reject the bail bond if it is dissatisfied with the source of the funds, the reliability of the obligors, the value of the security, the qualifications of the surety, or indeed "any feature of the undertaking [that] contravenes public policy" (CPL 520.30 [1]; see also Insurance Law § 6803 [b]).  Under Judelson's interpretation, a court could reject a bail bond following a bail source hearing based on the surety's qualifications or because the surety failed to properly vet the underlying security, yet, because the surety "posted" bail bond, the surety could still retain the premium.  Such an outcome does not comport with the legislative intent to protect against abuses in the bail bond industry.

In short, Insurance Law § 6804 (a) prohibits a bail bond surety from retaining a premium when the criminal defendant is not released on bail.

                              III.

The insurance law principle that premium follows risk further supports this result.  The legislature originally placed the predecessor bail bond compensation statute in the Code of Criminal Procedure (Code of Criminal Procedure § 554-b [5]).  However, when the legislature replaced the Code of Criminal Procedure with the Criminal Procedure Law in 1971, the bail bond compensation statute was moved to the Insurance Law (former Insurance Law § 331).  This move reflects a legislative intent

that the provision regulating bail bond compensation, along with certain other Code of Criminal Procedure provisions, "do not fit into or belong in a body of criminal procedure law" and instead belong in "other, more appropriate chapters of the consolidated laws" (Senate Mem in Support, Bill Jacket, L 1971, ch 545 at 4). The law today now deems entities engaged in the bail business to be "doing an insurance business" (Insurance Law § 6801 [a] [1]). It is therefore appropriate to look to principles of insurance law for guidance (see Motor Veh. Acc. Indem. Corp. v National Grange Mut. Ins. Co., 19 NY2d 115, 118-119 [1967]).

The question before us ultimately turns on when a "premium" is earned. The use of the word "premium" in section 6804 (a) is significant because that term connotes a consideration paid to an insurer for assuming a risk (see Ollendorf Watch Co., Inc. v Pink, 279 NY 32, 36-37 [1938]; see also Home Ins. Co. v Chang, 41 NY2d 288, 290 [1977]; S.A.F. La Sala Corp. v CNA Ins. Cos., 291 AD2d 228, 229 [1st Dept 2002]. Risk, when used "with reference to insurance, describes the liability assumed as specified on the face of the policy" (Continental Ins. Co. v Aetna Ins. Co., 138 NY 16, 21 [1893] [emphasis added]). Notably, in 1997, when the legislature amended section 6804 to increase premium rates to sureties, the sponsor justified the change as providing "an incentive to assume more risk by bonding agents" (Senate Introducer Mem in Support, Bill Jacket, L 1997, ch 400 at 4 [emphasis added]).

When does a bail bond surety incur risk?  In our view, the risk associated with the bail bond is that the principal admitted on bail will fail to appear and the bail bond will be forfeited (see CPL 540.10).  If the posted collateral does not cover the bail bond, the surety may suffer a financial loss.  The surety does not incur this risk when the principal is not released and so has no opportunity to jump bail (see Penal Law §§ 215.55, 215.56, 215.57).  While the surety assumes a binding obligation to pay the bail upon posting the bail bond, no risk attaches from this obligation alone.  Risk is triggered only when the court takes additional steps following the posting -- approving the bail bond and issuing a certificate authorizing the principal's release (see CPL 510.40 [3]).  When a hearing is ordered under CPL 520.30, the court approves or disapproves the bail bond after the hearing (see CPL 520.30[3]).  If the court disapproves the bail bond, the surety never runs the risk it contracted to insure.  In light of the statutory language and legislative history described above, the principle that premium follows risk also supports our interpretation of Insurance Law article 68 as providing that, when a court holds a bail source hearing under CPL 520.30, the surety may retain a premium only when the principal is released on bail.

IV.

Accordingly, the certified question should be answered in the negative.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative. Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Fahey, Garcia and Wilson concur. Judge Feinman took no part.

Decided June 27, 2017