**Esther SARAVIA, et al., Appellees,**

v.

**1736 18TH STREET, N.W., LIMITED PARTNERSHIP, Appellant.**

No. 87–7114.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1988.

Decided April 8, 1988.

Philip M. Musolino, Washington, D.C., for appellant.

Edward Allen, Washington, D.C., for appellees, Saravia, et al. Sally Frank, Washington, D.C. also entered an appearance for appellees, Saravia, et al.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Julia L. Sayles, Trial Asst., Washington, D.C., were

---

on the brief for appellee, District of Columbia.

William J. Perlstein, Duane D. Morse, Alan S. Tenenbaum, Thomas W. Swegle, and Lynn E. Cunningham, Washington, D.C., were on the brief for amicus curiae, Neighborhood Legal Services Program of the District of Columbia, urging affirmance.

Before MIKVA, EDWARDS and STARR, Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

Appellant is a limited partnership. Its sole asset is a rental apartment building located in the District of Columbia. Acquired by the partnership in March 1983, the property consists of 24 apartment units. Currently, only a handful of the units are occupied, the rest having been left unrented as their tenants vacated the premises. The combination of low rents and low occupancy levels resulted in the building becoming uneconomical to maintain. Expenses soon began to outstrip rental income; the costs of providing essential utilities—for example, water and gas—far exceeded total monthly rents. In August 1984, the partnership filed a Chapter 11 petition in bankruptcy court. The limited partnership continues to run the building as a debtor-in-possession.

In March 1985, the tenants, in response to ever-worsening conditions, began to withhold rent and deposit those sums into an interest-bearing escrow account. After the partnership entered Chapter 11 and the tenants began withholding rent, the situation deteriorated further. Provision of services to the building was erratic. Often no hot water was available; trash accumulated; security was nonexistent. Conditions were, in the words of the bankruptcy judge, "deplorable."

In November 1985, the partnership moved to reject all residential leases as provided for in section 365 of the Bankruptcy Code, 11 U.S.C. § 365 (1982 & Supp. IV 1986). That statute provides in pertinent part:

(a) ... [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

.     .     .     .     .

(h)(1) If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, ... the lessee ... may treat such lease ... as terminated by such rejection ... or, in the alternative, the lessee ... may remain in possession of the leasehold ... under any lease ... the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law.

11 U.S.C. § 365(h). This statute facilitates reorganizations by allowing debtors to extricate themselves from unfavorable, often long-term, executory contracts.

In the present case, there is no dispute that the debtor properly rejected the tenants' leases. Rather, the dispute concerns the effects of that rejection and the extent to which the debtor is released from obligations placed on all residential landlords under local regulations. Reasoning that the right of rejection had to "mean something," the bankruptcy court held that the landlord is released, upon rejection of leases, from all obligations imposed by local law, including the provision of utilities and essential services, and other obligations under the District of Columbia's housing code relating to habitability.

Accordingly, the bankruptcy court entered an order in July 1986 allowing the debtor to terminate the provision of utilities and other services to the property. *See* Appendix of Appellees at 1A. After the District of Columbia intervened in the action, the court modified its order and simply relieved debtor of "its obligation or responsibility for charges for the provision of gas and electric services to the premises under the operation of Section 365 of the Bankruptcy Code and as approved by this Court, both as a personal obligation and as

a lien against the property...." *Id.* at 4A. The bankruptcy court thus relieved the debtor of responsibility for providing services and for curing any violations of the District of Columbia housing code. This had the effect of requiring the District of Columbia to continue to provide essential services, with the landlord incurring no obligation to pay.

We pause briefly to state the nature of the obligations placed on landlords by District of Columbia law and the purposes the District seeks to achieve through its regulation of rental housing. In brief, the District has promulgated a wide-ranging set of regulations dealing with building maintenance, building capacities, fire protection, heating and water facilities, lighting and ventilation, and other aspects of rental properties. *See generally* D.C. Mun.Regs. tit. 14 (1986). The District, in issuing these comprehensive regulations, has explicitly stated that they are "for the purpose of preserving and promoting the public health, safety, welfare, and morals through the abatement of certain conditions affecting residential buildings and areas." *Id.,* § 100.2. In addition, several municipal statutes regulate the terms on which tenants may be evicted, and on which landlords may convert their units for personal uses. *See* D.C. CODE ANN. §§ 45–2551, 2552, 1601–1663 (1981). Rents and rates of return are strictly regulated. *See id.,* §§ 45–2501–2529.2. These interrelated provisions reflect the District's determination to regulate residential rental housing in a comprehensive manner for the purpose of preserving public safety and welfare.

Following the bankruptcy court's decision to release the debtor from the obligations imposed by local law, the tenants obtained leave to appeal to United States District Court. On appeal, the district court reversed. In a memorandum opinion, Judge Norma Holloway Johnson emphasized that although section 365 allows debtors to reject leases, the provision relieves debtors only of *private* contractual obligations. The statute, Judge Johnson concluded, does not speak to obligations otherwise imposed by law.

To buttress its reading of the statute, the district court looked to another provision bearing on the matter, 28 U.S.C. § 959(b) (1982). That measure provides in pertinent part:

[A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage or operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

Relying on this clear statement from Congress and several federal district court decisions, Judge Johnson concluded that section 365 does not permit a landlord to avoid complying with regulations governing the provision of rental housing. The district court viewed 11 U.S.C. § 365(h) and 28 U.S.C. § 959(b) as complementary: the debtor is permitted to reject private contracts under section 365(h), but is not relieved of public obligations—especially ones going to health and safety—under section 959(b).

## II

■ In our view, this case is readily resolved.* The district court's analysis is

---

* In rather languid fashion, the parties have mildly disputed whether appellate jurisdiction lies over the order under review here. In their brief, the tenants suggested in general fashion the possible existence of a jurisdictional defect. The tenants were joined on that score (albeit half-heartedly) by the District of Columbia, which favored us with a single modest footnote in its brief which concluded that the question is not "free from doubt." Still, that was more guidance than the debtor's attorney chose to

provide—not a word even in the debtor's reply brief joined the jurisdictional issue.

Under 28 U.S.C. § 158(d), the courts of appeals have jurisdiction to review final orders by district courts, which constitute the initial level of review from rulings of the bankruptcy courts. Interlocutory orders are as a general matter not appealable, either to the district courts or the courts of appeals. Appeal from non-final orders to the district court may be granted, however, upon leave of the court. *See* 28 U.S.C. § 158(a). In contrast, the statute does not provide for

entirely correct and its judgment unimpeachable. As Judge Johnson rightly concluded, no inherent conflict exists between section 365(h) of the bankruptcy code and section 959(b) of the judicial code. Nothing in the bankruptcy code or in reason leads to the debtor's desired conclusion that District of Columbia housing law is preempted by the federal right of rejection in section 365. Indeed, section 959(b) leads precisely in the opposite direction. Congress explicitly stated that debtors-in-possession are not exempted from local law by virtue of federal bankruptcy law; rather, debtors are to "manage and operate the property ... according to the valid laws of the [jurisdiction] in which such property is situated...." 28 U.S.C. § 959(b). In our view, section 959(b), resolving as it does any possible conflict between the housing regulations of the District of Columbia and section 365 of the bankruptcy code, plainly controls this case.

As the district court found, ample authority buttresses this view. *See In re Friarton Estates Corp.*, 65 B.R. 586 (Bankr.S.D.N.Y.1986); *Ankrom v. Page Assoc.*, Civ. No. 82–1382 (D.D.C. Jan. 27, 1984); *In re Rangoussis*, Nos. 81–0121, 0267 (Bankr.D.D.C. Jan. 26, 1982). The only substantial authority to the contrary, *In re Stable Mews Assocs. Inc.*, 41 B.R. 594 (Bankr. S.D.N.Y.1984), is readily distinguishable. That bankruptcy proceeding, in which the bankruptcy court released a debtor from obligations imposed by New York City's housing regulations by virtue of its rejection of leases pursuant to section 365, involved commercial leases. *See In re Stable Mews Assocs.*, 35 B.R. 603, 604 (Bankr.S.D.N.Y.1983). The interest in public health and safety, which is most powerfully extant in the context of residential leases, was therefore less compelling. Moreover, a bankruptcy court in the same jurisdiction, in what we view as a more persuasive analysis, subsequently rejected the *Stable Mews* approach. *See In re Friarton Estates*, 65 B.R. at 590 n. 3.

To be sure, section 959(b) does not constitute a blanket statement by Congress that state laws are never preempted by the bankruptcy laws. On the contrary, it seems clear that if a state law unduly impeded the operation of federal bankruptcy policy, the state law would have to yield. *See Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971). In the circumstances of this case, however, the only preemption question we need resolve is whether the obligations imposed by the District of Columbia's housing code impermissibly trench on the policies sought to be fostered by rejection of executory contracts pursuant to section 365(h). *See id.*

In our view, the public obligations imposed by District of Columbia law are simply not implicated by the right of rejection.

---

such discretionary review in the courts of appeals. In this case, the bankruptcy proceedings are continuing, and the order under review is thus interlocutory in nature. Accordingly, there is substantial question whether we have jurisdiction to decide the appeal.

But the appealability of non-final judgments in bankruptcy cases represents an uncertain and difficult doctrinal puzzle. Powerful arguments have been mustered to support the proposition that jurisdiction does indeed lie under the circumstances of this case, notwithstanding judicial disaffection for piecemeal interlocutory appeals. Such impressive authority as *In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir. 1982) (Breyer, J.), and *Matter of Riggsby*, 745 F.2d 1153 (7th Cir.1984) (Posner, J.), suggest that interlocutory orders may be appealed under § 158(d) if the nature of the ruling and the factual circumstances suggest that, for purposes of the particular matter resolved in the order, it is in substance final. Under this view, the order at issue is sufficiently final to support our jurisdiction.

We expressly decline, however, to resolve the larger doctrinal puzzle in the circumstances of this case. The adversary system has not served us well, frankly, in coming to grips with this difficult and sensitive question. The parties have been virtually mum on the subject, doing little more than flagging the point as opposed to litigating it. We are nonetheless comforted in our decision to resolve this case by the formidable authority from sister circuits squarely supporting our jurisdiction, notwithstanding the want of an underlying final order. We therefore go forward in this particular case, but leave to another day the question for this circuit as to the nature and extent of appellate jurisdiction over non-final orders of the bankruptcy court which have been the subject of appeal to the United States District Court, not as a matter of right but at the district court's discretion.

Rejection of the leases did no more than release the debtor from the contractual obligations undertaken in those leases. The debtor does not cease to be a landlord simply by virtue of rejection of the leases, and there is no reason to exempt the partnership from obligations imposed by local law on all landlords.

This is especially so where, as here, the local laws in question are designed to protect public health and safety. Where laws of this sort are challenged under the Supremacy Clause, courts are not to condemn them to the oblivion of preemption doctrine "unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Congress has evinced no such intent in enacting section 365(h); indeed, section 959(b) looks in exactly the opposite direction. Nor will the general bankruptcy policy of fostering the rehabilitation of debtors serve to preempt otherwise applicable state laws dealing with public safety and welfare. This, we believe, is the import of 28 U.S.C. § 959(b). Further buttressing this view is 11 U.S.C. § 362(b)(4) (1982), which provides a "police power" exception to the automatic stay otherwise imposed in all actions against debtors.

Indeed, dictum from the Supreme Court in *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), virtually compels this conclusion. There, the Court stated:

> Title 28 U.S.C. 959(b) provides … evidence that Congress did not intend for the Bankruptcy Code to preempt all state laws. Section 959(b) commands the trustee to "manage and operate the property in his possession … according to the requirements of the valid laws of the State." … [T]he section … supports our conclusion that Congress did not intend for the Bankruptcy Code to preempt all state laws that otherwise constrain the exercise of a trustee's powers.

474 U.S. at 505, 106 S.Ct. at 761–62 (footnote omitted). Section 959(b) was not directly at issue in *Midlantic*, which dealt with abandonments of property under the bankruptcy code, because the Court viewed the statute as applying only to operating businesses, not ones that were in the process of being liquidated. In this case, however, section 959(b) is indeed apposite, and we find it difficult to see any way of avoiding the clear import of the Court's dictum in *Midlantic*: 28 U.S.C. § 959(b) provides clear evidence that Congress did not intend to allow Chapter 11 to serve as an automatic shield from state laws regulating health and safety.

Thus, the debtor is obliged to demonstrate that the District of Columbia's housing regulations in fact unduly impede the policies of *section 365(h)* in particular; it will not do to fall back to the "general policies" of the bankruptcy laws. And our reading of section 365(h) persuades us that it does not implicate public obligations; rather, it deals with executory contracts and leases. Covenants in private leases—which in the particular circumstances of this case perhaps do not go beyond the minimum services required by local law—often *do* provide for additional amenities. To the extent lease covenants go beyond the requirements of law (for example, providing for a doorman, indoor parking, and the like), the rejection of leases obviously releases debtors from such purely contractual obligations.

In sum, rejection of executory contracts and leases under section 365(h) releases debtors-in-possession from their privately undertaken contractual obligations, but it does not relieve such debtors of *all* obligations. Inasmuch as the obligations imposed by District of Columbia for the benefit of public health and safety are independent of private leases, we are of the view that rejection of leases under section 365(h) has no bearing on the debtor-landlord's obligations under applicable local law.

*Affirmed.*