**In re Andrea TOLEDANO, Debtor.**

**Andrea Toledano and Brian DeMars, Plaintiffs,**

v.

**David Kittay, as Chapter 7 Trustee of the estate of Andrea Toledano, and South Park Associates, LLC, Defendant.**

**Bankruptcy No. 00–42470 (BRL).**
**Adversary No. 03–8153 (BRL).**

United States Bankruptcy Court,
S.D. New York.

Aug. 7, 2003.

Kittay & Gershfeld, P.C., Tarrytown, NY, by David R. Kittay, Esq., Michelle G. Gershfeld, Esq., Attorneys for the Chapter 7 Trustee.

Geron & Associates, P.C., New York City, by Yann Geron, Esq., Fred Stevens, Esq., Attorneys for South Park Associates, LLC.

The Law Offices of Michael B. Wolk, P.C., New York City, by Michael B. Wolk, Attorney for the Debtor and DeMars.

**MEMORANDUM DECISION GRANT-ING MOTION FOR SUMMARY JUDGMENT AND DENYING MO-TION FOR ABANDONMENT**

BURTON R. LIFLAND, Bankruptcy Judge.

South Park Associates, LLC ("South Park"), and David R. Kittay (the "Trus-tee"), as chapter 7 trustee of the estate of Andrea Toledano (the "Debtor"), move for summary judgment (the "Summary Judg-ment Motion"), pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Rules") and Rule 7056 of the Federal Rule of Bankruptcy Procedure ("Bank-ruptcy Rules"), dismissing the Debtor's and Brian DeMars' ("DeMars" and togeth-er with the Debtor, the "Plaintiffs"), com-plaint and amended complaint for failure to state a claim and based upon the doc-trines of *res judicata* and *collateral estop-pel,* or in the alternative, dismissing Plain-tiffs' complaint and amended complaint for failure to state a claim pursuant to Rule 12(b)(6).

By separate motion (the "Abandonment Motion"), the Debtor seeks an order di-recting the abandonment of certain prepet-ition legal claims (the "Legal Fee Claims"), to the Debtor or, in the alternative, autho-rizing the Debtor to enforce and liquidate the Legal Fee Claims with the potential recovery to be administered as part of the Debtor's bankruptcy estate. The Trustee objects to the Abandonment Motion.

**Background**

On November 3, 2000, the Debtor filed a *pro se* voluntary bankruptcy petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), and the Trustee was appointed. On her bankruptcy petition, the Debtor listed an interest in a rent stabilized resi-dential apartment located at 230 Central Park South, Apartment 9/10B, New York, New York (the "Premises"). The Debtor and DeMars reside at the Premises. By application dated March 21, 2003 (the "Lease Assignment Application"), the Trustee sought an order authorizing him to (i) assume and assign the Debtor's in-terest in the rent-stabilized lease (the

"Lease"), for the Premises to South Park, the Debtor's landlord, for $150,000, and (ii) convey the Premises vacant and free of all occupants. The Debtor and DeMars filed a sixty-eight page objection to the Lease Assignment Motion, dated May 6, 2003 (the "Objection"). The Debtor and De-Mars also commenced the instant adversary proceeding by filing a seventy-two page complaint, dated May 6, 2003 (the "Complaint"). The Complaint, a near verbatim restatement of the Objection, sought various types of declaratory judgments and injunctive relief, which would prohibit the Trustee from assuming and assigning the Lease, would recognize the Debtor's and DeMars' alleged possessory interests in the Lease, and would prohibit the Trustee from evicting the Debtor and DeMars from the Premises. The Complaint also alleged certain offsets due the Debtor on account of her alleged pre-petition claims against South Park (the "Legal Fee Claims"), and sought a judgment in favor of the Debtor against South Park on account of such alleged claims.

On or about May 13, 2003, the Debtor and DeMars filed an application with the District Court to withdraw the reference of this adversary proceeding and the Lease Assignment Motion to the Bankruptcy Court. A hearing on the Lease Assignment Motion was held on May 13, 2003 (the "Hearing"), at which time the Court entertained oral argument from counsel to the Trustee, South Park, the Debtor and DeMars. At the conclusion of the Hearing, the Court deferred ruling on the Lease Assignment Motion and directed the parties to submit supplemental legal briefs in support of their respective applications and objections by no later than June 11, 2003. The Hearing was ultimately adjourned to July 9, 2003 (the "Adjourned Hearing").

By motion dated June 5, 2003 (the "Pleadings Motion"), South Park and the Trustee (collectively, the "Defendants"), sought an order (i) pursuant to Rule 12 and Bankruptcy Rule 7012, directing the Plaintiffs to file a more definitive statement, or in the alternative, striking certain of the Plaintiffs' pleadings contained in the Complaint, and (ii) dismissing Plaintiffs' causes of action relating to the Legal Fee Claims. The Debtor failed to file an opposition to the Pleadings Motion. In addition, in accordance with this Court's direction, South Park and the Trustee submitted a supplemental brief, dated June 11, 2003, in further support of the Lease Assignment Motion. The Debtor and DeMars did not submit a supplemental brief in support of their Objection.

By order dated June 17, 2003, the District Court denied the motion to withdraw the reference of this case to the bankruptcy court.

At the Adjourned Hearing, this Court advised it had considered all of the papers submitted by the Landlord, South Park, the Debtor, and DeMars, as well as the oral argument presented at the initial Hearing, and issued a written opinion granting the Lease Assignment Motion. The memorandum decision and order, dated July 9, 2003 (the "Decision and Order"), authorized the Trustee to assume and assign the Lease to South Park for $150,000, free of all occupants. The Order further directed the Debtor and DeMars to vacate the Premises within ten days of its entry.

Immediately prior to the Adjourned Hearing, the Plaintiffs filed an amended complaint (the "Amended Complaint"), with the Clerk of Court and served it upon Defendants' counsel but did not inform, or provide a copy to, chambers. Having dedicated considerable time to deciphering and analyzing the rambling 74 pages, 171 paragraph Complaint, and the Defendants'

Pleadings Motion, the Court was made aware of Plaintiffs' belated intention to amend the Complaint only moments before issuing a ruling: notwithstanding that the Debtor and DeMars were in possession of the Motion to Dismiss for over one month and that the Amended Complaint was a more svelte version of the initial Complaint. I ruled that the Amended Complaint was not actually before the Court at that time, heard argument, granted the relief sought in the Pleadings Motion, and ruled, *inter alia*, that certain paragraphs of the Complaint were stricken.[1] I also dismissed all causes of action asserted by the Plaintiffs relating to the Legal Fee Claims because the Plaintiffs lacked standing to assert such claims which properly belong to the Debtor's bankruptcy estate. The Debtor argued that the original Complaint was a nullity in that an Amended Complaint was filed prior, although only moments prior, to the hearing on the Pleadings Motion. The Amended Complaint contains the same causes of action relating to the "Legal Fee Claims" in a reworded form. The Trustee subsequently filed this motion to dismiss the Amended Complaint.

On July 15, 2003, this Court entered a judgment (the "Judgment"), directing the Debtor and DeMars to vacate the Premises within ten days of the date of the entry of the Decision and Order. The Judgment also provided that, in the event the Debtor or any individual currently occupying the Premises did not voluntarily vacate the Premises, the Trustee was authorized to settle an order on three days' notice upon the Debtor and her counsel directing the

United States Marshals Service to effectuate the terms of the assignment of the Lease by evicting all occupants for the Premises.

The Debtor has appealed the Judgment and obtained a stay.

## Discussion

### The Summary Judgment Motion Addressed to the Amended Complaint

Rule 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Certain Funds on Deposit in Scudder Tax*

---

1. The following paragraphs in the Complaint were stricken: 7, 8, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 76, 77, 81, 82, 84, 85, 86, 89, 90, 95, 97, 98, 99, 104, 105, 108, 109, 110, 115, 117, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, and 155.

*Free Inv. Account No. 2505103,* 998 F.2d 129, 131 (2d Cir.1993).

The Amended Complaint seeks identical relief to the relief sought by the Plaintiffs in the original Complaint albeit in a somewhat less prolix document.[2] Both complaints seek various types of declaratory judgments and injunctive relief, which would (i) prohibit the Trustee from assuming and assigning the Lease, (ii) recognize the Debtor's and DeMars' alleged possessory interests in the Lease, and (iii) prohibit the Trustee from evicting the Debtor and DeMars from the Premises. Both complaints also allege certain offsets allegedly due the Debtor pre-petition on account of the Legal Fee Claims, and seek entry of a judgment in favor of the Debtor against South Park on account of such alleged claims.

■ This Court has already addressed the claims and issues set forth in the Complaint and Amended Complaint when they were previously asserted by the Plaintiffs in their Objection to the Trustee's Lease Assignment Motion. All parties were given the opportunity to brief their arguments in detail, even to submit supplemental briefs and to present oral argument at the Hearing and Amended Hearing. Ultimately, this Court overruled the Objection and authorized the Trustee to assume and assign the Lease, convey the Premises free of all occupants, and if necessary, authorized the Trustee to evict the Debtor and DeMars from the Premises. This Court also dismissed Plaintiffs' causes of action relating to the Legal Fee Claims and ruled that such claims belonged to the Trustee

to be administered as part of the Debtor's bankruptcy estate. In view of the fact that my prior Memorandum Decision and Order Granting Trustee's Motion to Assume and Assign Lease disposes of the issues currently before me, it is hereby incorporated herein and made a part of hereof, as Exhibit A. Accordingly, the Complaint and the Amended Complaint must be dismissed on the merits in accordance with Bankruptcy Rule 7056. It is likewise clear that the Complaint and Amended Complaint are also subject to dismissal pursuant to Rule 12(b)(6), in their entirety, for failure to state a claim upon which relief can be granted, because the ruling at the Adjourned Hearing, the Order and the Judgment collectively render the relief requested by the Plaintiffs moot.

Furthermore, under the doctrines of *res judicata* and *collateral estoppel*, Plaintiffs are barred from relitigating issues relating to the Trustee's authority to assume and assign the Lease, the ability of the Trustee to evict the Debtor and DeMars in connection with the Lease assignment, and Plaintiffs' standing to pursue the Legal Fee Claims because these issues have already been decided on the merits in connection with the Trustee's Lease Assignment Motion. For all of the foregoing reasons, the Trustee's Motion for Summary Judgment is granted and the Complaint and Amended Complaint are dismissed.

SUBMIT AN ORDER CONSISTENT WITH THIS RULING.

### The Abandonment Motion[3]

■ Apparently recognizing that any cause of action for "fee claims" belongs to

---

**2.** See Plaintiffs Statement of Facts. Pursuant to Rule 7056–1(c) of the Local Rules of Bankruptcy Procedure, analogue to Civil Rule 56.1 of the Local District Rules for the Southern District of New York, "[a]ll material facts set forth in the statement required to be served by the moving party *shall be deemed admitted*

unless controverted by the statement required to be served by the opposing party." Local R. Bankr.P. 7056–1(c). No counter-statement has been filed by the Plaintiffs.

**3.** In response to the Summary Judgment Motion, the Debtor links the determination of her Legal Fee Claims with her separate abandon-

the Trustee to administer, the Debtor has moved for abandonment. By the Abandonment Motion, the Debtor seeks an order directing the abandonment of the Legal Fee Claims to the Debtor or, in the alternative, authorizing the Debtor to enforce and liquidate the Legal Fee Claims with the potential recovery to be administered as part of the Debtor's bankruptcy estate. The Trustee objects to the Abandonment Motion in that he is currently administering the claims.

Pursuant to Section 554(b) of the Bankruptcy Code, a party in interest can apply to the court for the issuance of an order compelling the trustee to abandon any property of the estate "that is burdensome to the estate" or "that is of inconsequential value and benefit to the estate." *See* 11 U.S.C. § 554(b).

The Debtor contends first that the Legal Fee Claims are "burdensome to the estate" because prosecution of the claims would be costly to litigate, and there is no guaranty of a meaningful net recovery for the benefit of the estate. Second, the Debtor argues that the Trustee's failure to pursue the Legal Fee Claims indicates that the claims may be of "inconsequential value to the estate." And lastly, the Debtor argues that this court should allow the Debtor to pursue the Legal Fee Claims on behalf of the estate due to the Trustee's failure to pursue those claims thus far. The Trustee, however, contends that any delay in pursuing such claims is due in large part to the Debtor's well-documented failure to cooperate with the Trustee in administering this estate. *See South Park Associates, LLC. v. Toledano, (In re Toledano),* No. 02–02051 Findings of Fact and Conclusions of Law Denying Discharge, July 29, 2002. More importantly, however,

the Trustee is now pursuing the Legal Fee Claims and has represented that he anticipates that he will "promptly resolve all issues" relating to such claims. Accordingly, the Debtor's Abandonment Motion is denied.

SUBMIT AN ORDER CONSISTENT WITH THIS DECISION.

## EXHIBIT A

### *MEMORANDUM DECISION AND ORDER GRANTING TRUSTEE'S MOTION TO ASSUME AND ASSIGN LEASE*

David Kittay (the "Trustee"), the chapter 7 trustee, moves (the "Motion"), for an authorization to assume and assign Andrea Toledano's (the "Debtor"), legal interests in a rent stabilized lease (the "Lease"), to the Debtor's landlord, South Park Associates, LLC (the "Landlord" and together with the Trustee, the "Movants"), and convey the leased premises (the "Premises"), free of all occupants. The Debtor and her live-in boyfriend, Brian DeMars, jointly oppose (the "Objection"), the Trustee's Motion on several grounds. The Debtor's principal objection is that section 959(b) of title 28 of the United States Code prohibits the Trustee from invoking section 365 of title 11 of the United States Code (the "Bankruptcy Code"), to assign the Lease free of the Debtor's possessory interest. The estate is to receive $150,000 in consideration of the conveyance to the Landlord.

**Background**

This is the Debtor's second passage through the bankruptcy court. With some degree of consistency, her discharge has been denied in each proceeding. On November 3, 2000 (the "Petition Date"), the

ment motion. Accordingly, I will determine both motions at this time as they were argued simultaneously.

Debtor filed her current voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code, listing as her largest debt a $62,500 judgment (the "1990 Judgment"), rendered against her on November 23, 1990, for non-payment of rent. Together with DeMars, the Debtor resides at a luxury duplex apartment overlooking Central Park pursuant to a rent-stabilized lease. The Debtor is the only tenant listed on the lease.

The protracted history which precedes the pending Motion reflects a twenty-year struggle through various courts and breached stipulations whereby three successive landlords have attempted to collect rent from this Debtor. In the early 1980s, the Debtor failed to pay rent to her first landlord, W.T. Associates, ("WT"), for approximately three years. *See* Application of Landlord for an Order Compelling Debtor to Pay Post–Petition Rent at ¶ 6, July 23, 2001. Thereafter, WT settled for $25,000 and sold the Premises to Gary Iskowitz. *See id.* The Debtor then failed to pay rent for approximately five years. *See id.* at ¶ 7. This time, Iskowitz obtained the 1990 Judgment against the Debtor on January 10, 1990. *See id.* The Debtor, in turn, filed her first chapter 7 petition in this Court. *See In re Toledano*, No. 91–11221. That case was ultimately closed after the Debtor was denied her discharge.

*See,* Notice by Clerk's Office: Denial of Discharge, No. 91–11221, Adv. No. 91–6143, August, 2, 1995. Thereafter, Iskowitz sold his interests in the leased premises.[4]

In 1998, the Debtor again ceased paying rent to her third landlord, thereby compelling him to commence yet another non-payment proceeding. Following a trial on June 19, 2000, the Civil Court of the City of New York, County of New York, issued a judgment (the "2000 Judgment"), in favor of the Landlord and stayed the issuance of the warrant of eviction for five days. Three days later, the Debtor tendered payment curing the awarded arrears. Thereafter, the 2000 Judgment was amended to include interest. After the Debtor failed to pay the interest, on October 26, 2000, a warrant of eviction was issued. Promptly thereafter, the Debtor filed her second chapter 7 petition in this Court on November 3, 2000, once again listing the 1990 Judgment in her schedules.

On July 29, 2002, after a trial, I entered an order pursuant to section 727(a)(4)(A) of the Bankruptcy Code denying the Debtor's discharge for "knowingly and fraudulently making false oaths and accounts in connection with her bankruptcy case."[5] *See* Findings of Fact and Conclusions of Law Denying Discharge, ("Order Denying

---

4. In September 1994, Iskowitz surrendered the premises back to WT in exchange for the purchase price Iskowitz initially paid. In 1995, WT dissolved and transferred its assets, including its claims against the Debtor, to the current Landlord.

5. Specifically, the Debtor listed on Schedule B attached to her petition that she had $50 in cash on hand as of the Petition Date, while she actually had nearly $18,000 in cash on hand within the Premises. *See* Order Denying Discharge at ¶¶ 12,22–25. The Debtor further provided false testimony when she failed to disclose the existence of these funds

at her section 341 meeting of creditors. *See* Order Denying Discharge at ¶ 23. Moreover, the Debtor failed to list certain creditors on the schedules to her petition, including her attorney and various taxing authorities. *See* Order Denying Discharge at ¶¶ 28–34. On Schedule B to her petition, the Debtor stated that she had no interest in any insurance policies, despite the fact that she has been a beneficiary under DeMars' insurance policy since 1994, has received all statements for the policy and actually paid at least one annual premium. *See* Order Denying Discharge at ¶¶ 35–40.

Discharge"), No. 00–42470, A.P. 02–2051, July 29, 2002. Thereafter, the Trustee and the Special Procedures Division of the Internal Revenue Service discovered that the Debtor had listed a nonexistent social security number on her petition. On February 2003, over three years after the Petition Date, I signed an order amending the caption in the Debtor's case to reflect her true social security number. After several motions and directives compelling the Debtor to pay her rent, she now is current with post-petition rent.[6]

**The Debtor's Objection to the Trustee's Motion to Assume and Assign the Lease**

In response to the Trustee's Motion, the Debtor moved before the United States District Court, Southern District of New York, to withdraw the reference pursuant to section 157(d) of title 28 of the United States Code ("Title 28"). The District Court denied the Debtor's motion on grounds that "[t]his is a routine action seeking to assign the debtor's lease in a rent stabilized apartment," and "[t]he present proceeding in the Bankruptcy Court does not require a 'significant interpretation' of § 959." *See* Order ("District Court Order"), *Toledano v. Kittay*, No. 03–CV–3358 (JSM) June 17, 2003. The Debtor now asserts a potpourri of objections to the Motion. First, the Debtor asserts that the Motion must be denied on grounds that the Trustee lacks the authority to assign the Debtor's interest in the Premises on various state and federal law grounds, including section 959(b) of Title 28. Second, the Debtor argues that section 363(f) prohibits the Trustee's proposed assignment. Third, the Debtor asserts that DeMars has an independent possessory interest in the Premises which may block the proposed assignment. Fourth, the Debtor contends that the so-ordered stipulations between the Landlord and the Trustee extending the Trustee's time to assume or reject the Lease are procedurally defective because the Debtor was not noticed of the proposed stipulations and that consequently the lease is deemed rejected. Finally, the Debtor asserts that the Motion should have been brought by means of an adversary proceeding in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule"). Toward this end, the Debtor and DeMars commenced an adversary proceeding (the "Complaint"), against the Trustee and the Landlord. *See Andrea Toledano and Brian DeMars v. David Kittay and South Park Associates, L.L.C.*, 03–8153. The 74 page Complaint in that adversary proceeding mirrors the 68 page Objection practically verbatim.

The Debtor, the Landlord and the Trustee appeared before me on the Motion and Objection at a hearing on May 13, 2003, at which time, after hearing arguments, I granted the parties additional time to sub-

---

**6.** In July 2001, the Landlord moved to compel the Debtor to pay post-petition rent, as the Debtor had not paid any rent during the nine months since the Petition Date. *See* Application of [Landlord] for an Order Compelling Debtor to Pay Post–Petition Rent, July 23, 2001. On August 5, 2001, the Debtor and Landlord entered into a so ordered stipulation (the "August Stipulation"), whereby the Debtor agreed to pay 80 percent of the post-petition rent due over the past nine months, and to remain current with post-petition rent

thereafter. *See* Stipulation Providing for Debtor's Partial Payment of Post–Petition Rent, Without Prejudice to Certain Claims, August 5, 2001. Thereafter, the Debtor failed to comply with the terms of the August Stipulation and on August 7, 2002, after having adjourned the Landlord's request, I ultimately signed an order directing the Debtor to pay her rent in accordance with the terms of the August Stipulation. *See* Order Directing Debtor to Pay Certain Post–Petition Rents Owed to Landlord, August 7, 2002.

mit final supplemental briefs and adjourned the hearing to June 25, 2003. The Movants have since submitted a concise joint supplemental brief in response to the assorted objections. Nothing further has been submitted on behalf of the Debtor and DeMars.

## Discussion

### The Trustee is Authorized to Assume and Assign the Debtor's Interest in the Premises

The Debtor's legal interests stemming from her rent-stabilized lease are property of the estate. Bankruptcy Code section 541(a)(1) provides that an estate is created upon the commencement of a case and that such estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of this paragraph is broadly interpreted because "Congress intended a broad range of property ... to be included in the estate." *United States v. Whiting Pools*, 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Section 541(b), which provides an extensive list of property specifically not included in the estate, quite clearly does not include an exception for a debtor's interest in a rent-stabilized lease. 11 U.S.C. § 541(b). Accordingly the Debtor's legal interest in the Lease is property of the estate. *See In re Stein*, 281 B.R. 845,

849 (Bankr.S.D.N.Y.2002) (holding that a debtor's interest in a non-eviction plan lease under the Martin Act is property of the estate).[7]

The Trustee is authorized to assume and assign a debtor's unexpired lease pursuant to section 365 of the Bankruptcy Code. 11 U.S.C. § 365. While section 365(c) identifies certain contracts and unexpired leases which may not be assumed or assigned, it does not restrict a trustee's ability to assume and assign a rent-stabilized lease.

Nonetheless, the Debtor asserts that section 959(b) of Title 28 prohibits the Trustee from doing so on grounds that the assignment would be inconsistent with state or local law, particularly the RSC. The Debtor fails to cite any authority directly supporting her argument, but instead relies on a multitude of inapposite cases which have no bearing on whether a chapter 7 trustee can assume and assign a debtor's interest in a rent-stabilized lease. For example, the Debtor relies on cases which stand for the limited proposition that the amount of rent owed pursuant to rent-stabilized leases may not be increased simply because either the landlord or tenant files a bankruptcy petition.[8] The Trustee here seeks to assume the Lease—not increase rent owed pursuant to the Lease. The Debtor also relies on cases involving a debtor-landlord's rejection of leases,[9] and

---

7. Although the *Stein* case did not specifically deal with a rent-stabilized lease governed by the New York State Rent Stabilization Code ("the RSC"), the court noted that it "would reach the same conclusion even if it treated the occupancy right as statutory." *Id.* at fn. 2 (*citing Finn v. 415 Fifth Ave. Co.*, 153 F.2d 501, 501 (2d Cir.1946)) (Judge Learned Hand held that the bankrupt's statutory right to possession under newly-enacted rent control laws passed to trustee), *cert. denied*, 328 U.S. 838, 66 S.Ct. 1014, 90 L.Ed. 1614 (1946).

8. *See Ernst v. Oberferst*, 166 F.2d 519 (2d Cir.1948) (holding that a trustee could not be compelled to pay rent on behalf of a rent-stabilized debtor at a market rate which exceeded the rent-stabilized rate); *Cullen v. Bowles*, 148 F.2d 621 (holding that a trustee, as landlord, may not raise rents collected under rent-stabilized leases by filing a bankruptcy petition).

9. For example, the Debtor relies on *Saravia v. 1736 18th Street, N.W. Ltd. Partnership*, 844 F.2d 823 (D.C.Cir.1988), which involved a debtor-landlord's obligations under section

the effects of rejection pursuant to section 365(h) [10] of the Bankruptcy Code. Section 365(h), by its terms, is inapplicable to the issue now before me because it protects non-debtor tenants upon a rejection of a lease by a debtor-landlord. Here, the Trustee seeks to assume the Debtor's Lease. [11]

Section 959(b) of Title 28 provides that a bankruptcy trustee "shall manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959(b). Section 959(b) reflects the general bankruptcy policy that fostering the rehabilitation of debtors will not "serve to preempt otherwise applicable state laws dealing with public safety and welfare." *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 589 (6th Cir.1990). Here, the Debtor asserts that an assignment of the estate's interest in the Debtor's lease would violate the sections 2524.1 and 2524.3 of the RSC, which prohibit eviction of rent-stabilized tenants who continue to timely pay their rent. [12] NEW YORK, N.Y., RENT STABILIZATION CODE, §§ 2524.1, 2524.3.

As the District Court noted in this case, the Trustee's proposed assignment is "a routine action seeking to assign the debtor's lease in a rent stabilized apartment" which "does not require a 'significant interpretation' of § 959." *See* District Court Order. A debtor's interest in a rent-stabilized lease is property of the estate which can be assumed and assigned in accordance with section 365 of the Bankruptcy Code. In *Resolution Trust Corp. v. Diamond ("Diamond 1")*, the Resolution Trust Corporation (the "RTC"), had taken over the liquidation of a savings and loan association whose assets included several rent-controlled and rent-stabilized apartments in New York City. *See Diamond 1*, 18 F.3d 111 (2d Cir.1994), *vacated and remanded sub nom. Solomon v. Resolution Trust Corp.*, 513 U.S. 801, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994), *on remand*, 45 F.3d 665 (2d Cir.1995) (*"Diamond II"*). The RTC was authorized by the Financial

365(h) of the Bankruptcy Code to continue to fund the provision of basic services to tenants after rejecting a lease. The court concluded that rejection of the leases did not release the debtor from it's obligation to continue providing maintenance, gas, water, lighting and other basic services to tenants. *See id.* at 825.

10. Section 365(h) applies to situations where the debtor is the lessor rather than, as here, the lessee. Upon a debtor-landlord's rejection of an unexpired lease, section 365(h) preserves certain rights of occupancy for the *non-debtor* tenant. 11 U.S.C. § 365(h).

11. The Debtor's reliance on *Friarton Estates Corp. v. City of New York (In re Friarton Estates Corp.)*, 65 B.R. 586 (Bankr.S.D.N.Y. 1986) is similarly misplaced. *Friarton Estates Corp.* scrutinized a debtor-landlord's ability to reject a rent-stabilized lease and the potential effects of a rejection under section 365(h). *Id.* at 591–93.

12. RSC Section 2524.1, in relevant part, provides:

(a) As long as the tenant continues to pay the rent to which the owner is entitled, no tenant shall be denied a renewal lease or be removed from any housing accommodation by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, except on one or more of the grounds specified in this Code, [and] (c) No tenant of any housing accommodation shall be removed or evicted unless and until such removal or eviction has been authorized by a court of competent jurisdiction on a ground authorized in this Part or under the Real Property Actions and Proceedings Law.

Institutions Reform, Recovery and Enforcement Act ("FIRREA"), to disaffirm or repudiate burdensome contracts and leases. When the RTC sought to disaffirm and repudiate rent-controlled and rent-stabilized leases, the tenants and the New York State Attorney General objected. The issue before the court was whether rent-controlled and rent-stabilized tenancies were statutory tenancies rather than contracts and leases, subject to the RTC's repudiation power. The court held that both rent-controlled and rent stabilized leases are contract-based leaseholds and therefore fall within the language of the statute that authorizes the RTC to repudiate the leases. Moreover, the court held that to the extent state law prevented the RTC from evicting tenants for as long as they continued to pay the regulated rent, and to the extent that state anti-eviction regulations interfered with the RTC's ability to accomplish its objectives, such state laws are preempted by FIRREA. *See Diamond II* at 675. Thus, the Second Circuit clearly established that (i) the term "lease" in a federal statute is defined under federal law, and (ii) a debtor/tenant's rights under a rent stabilized lease (or rent controlled lease) in New York are contractual rights grounded solely in the lease and are not unique statutory rights. The Movants argue, and I agree, that under the Bankruptcy Code, all rights in the

Premises are rooted in the Lease, and therefore, by operation of section 541 of the Bankruptcy Code, now belong exclusively to the Trustee. Under clear governing authority, the Debtor does not have an inchoate non-contractual possessory right in the Premises.

The *Diamond* holdings have been expanded to apply with equal force to chapter 7 trustees. For example, in *In re Yasin*, the court held that in accordance with the *Diamond* cases, a chapter 7 trustee is authorized to assume or reject rent-stabilized leases under section 365 of the Bankruptcy Code. *See In re Yasin*, 179 B.R. 43, 49 (Bankr.S.D.N.Y.1995).[13] In addition to the ability to assume a rent-stabilized lease, a chapter 7 trustee is authorized to transfer a debtor-tenant's occupancy rights in a rent-stabilized lease to the landlord. *See In re Stein*, 281 B.R. at 845. In *Stein*, a debtor-tenant objected to the trustee's motion to sell the debtor's lease under section 363(b) to the landlord, free and clear of the debtor's occupancy right, on grounds that a "free and clear" assignment would violate certain mandatory non-eviction clauses in his lease. *In re Stein*, 281 B.R. at 845. The debtor's occupancy rights in that case stemmed from the Martin Act,[14] pursuant to which a non-eviction plan was filed to convert the building to condominium ownership.[15] The Debtor objected on grounds that the trustee could not sell the his occupancy rights

---

13. The *Yasin* court ultimately held that although rent-stabilized leases may be rejected, the debtor-tenant may still be entitled to a renewal lease because pursuant to section 365(g), a *rejection* constitutes a breach rather than a termination. *See id.* at 50 (*emphasis added*). This portion of the decision is inapplicable to the facts currently before me because sections 365(g) and (h) deal only with the effects of the *rejection* of an unexpired lease. *See, In re Stein*, 281 B.R. at 850. Here, the Trustee seeks to *assume* and assign the lease.

14. In a footnote, the court noted that it "would reach the same conclusion even if it treated the occupancy right as statutory," *citing Finn v. 415 Ave. Co., supra* fn. 4.

15. When the debtor refused to purchase the apartment pre-petition, the Martin Act granted him a right to continued occupancy under New York State law. *See* Martin Act, N.Y. Gen. Bus. L. §§ 352–eeee(1), *et seq.* (McKinney's 1996 & West Supp.2002).

because such rights were not property of the estate. The court held that the debtor's occupancy rights became property of the estate under section 541 because they existed at the time the debtor filed his petition. *See id.* at 849. Noting that the estate owns the debtor's unmarketable occupancy right under a rent-stabilized lease when (1) the landlord is willing to purchase the debtor's interests "in lieu of going through the eviction proceeding," (2) "debtor has not offered the trustee more," and (3) "no one else is in a position to pay more," the court held that the trustee is authorized to transfer "the estate's rights of occupancy in [a rent-stabilized] [a]partment to the [landlord]." *Id.* at 852. Accordingly, section 959(b) does not prevent the Trustee from assuming and assigning the estate's interest in the Premises to the Landlord.

### DeMars Does Not Have an Independent Possessory Interest in the Premises

The Debtor also argues that the Trustee is prohibited from transferring the Debtor's and DeMars' occupancy interest in the Premises pursuant to sections 363(f) of the Bankruptcy Code. Section 363(f) is inapplicable here. Section 363(f) restricts the sale of the debtor's assets free and clear of interests "of an entity *other than the estate.*" [16] 11 U.S.C. § 363(f). First section 363(f) does not apply to the Debtor, because as stated above, her interests became property of the estate pursuant to section 541 on the Petition Date. By its terms, section 363(f) applies only to interests "of an entity other than the estate." 11 U.S.C. § 363(f). Moreover, section 363(f) does not apply to DeMars, because as discussed below, he has no independent possessory interest in the Premises. Therefore, the only other entity with an interest in the Premises is the Landlord and the Landlord, as buyer, obviously consents to the sale.

The Debtor asserts that pursuant to the RSC, DeMars has an independent possessory interest in the Premises based on a provision of the RSC which provides that:

Unless otherwise prohibited ..., if an offer is made to the tenant pursuant to the provisions of subdivision (a) of this section *and such tenant has permanently vacated the housing accommodation,* any member of such tenant's family, as defined in section 2520.6(*o*) of this Title, who has resided with the tenant in the housing accommodation as a primary residence for a period of no less than two years ... immediately prior to the permanent vacating of the housing accommodation by the tenant, or from the inception of the tenancy or commencement of the relationship, if for less than such periods, shall be entitled to be named as a tenant on the renewal lease.

New York, N.Y., Official Compilation of Codes, Rules and Regulations of the State of New York, tit. 9, subtit. S, ch. VIII, subch. B. Rent Stabilization Code, § 2523.5(b)(1) (2002)(*emphasis added*).

The provision relied on by the Debtor, however, only grants an independent pos-

---

16. Section 363(f) states:
The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
11 U.S.C. § 363(f).

sessory interest to an individual when the tenant of record is deceased or has permanently vacated the premises. "In the event of the tenant's death, the rent control regulations promulgated under the statutes additionally prohibited eviction of the surviving spouse or a family member who had been living with the tenant." *Rent Stabilization Ass'n of New York City, Inc. v. Higgins,* 83 N.Y.2d 156, 165, 608 N.Y.S.2d 930, 630 N.E.2d 626 (1993) (*citing* 9 NYCRR 2104.6[d] [1964]; 2204.6[d] [1984] ). "That protection was later extended to family members living with a tenant who voluntarily vacated the apartment." *Id. (citing Matter of Herzog v. Joy,* 74 A.D.2d 372, 376, 428 N.Y.S.2d 1 (1980), *aff'd* 53 N.Y.2d 821, 439 N.Y.S.2d 922, 422 N.E.2d 582 (1981)). The Debtor and DeMars cite three cases to support their argument that DeMars qualifies as a "family member" but neglect to even acknowledge the fact that the Debtor, the named tenant under the lease, is alive and has not "permanently vacated the housing accommodation," in accordance with section 2523.5(b)(1) of the RSC. In fact, the three cases relied on by the Debtor involve situations where the named tenant is no longer residing within the premises.[17] Accordingly, even if DeMars qualified as a "family member," the tenant of record is alive and has not vacated the Premises.

Accordingly, DeMars has no independent possessory interest in the Premises.

**The So–Ordered Stipulations Properly Extended the Trustee's Time to Assume or Reject the Lease**

The Debtor also asserts that the Lease is deemed rejected as a result of the Trustee's failure to timely assume the Lease. Section 365 provides a chapter 7 trustee a 60–day grace period, commencing on the petition date, to determine whether to assume or reject the debtor's unexpired real property lease. 11 U.S.C. § 365(d)(1). Section 365 was enacted to protect third parties, namely landlords, "from being left in doubt concerning their status vis-a-vis the estate." *See* H.R. No. 95–595, 95th Cong., 1st Sess. 348–49 (1978), U.S.Code Cong. & Admin.News 1978, 5963, 6304–05. Thus, "the primary purpose of section 365(d)(4) [and 365(d)(1), as applicable to chapter 7 trustees] is 'to protect lessors . . . from delay and uncertainty by forcing a trustee . . . to decide quickly whether to assume unexpired leases.' " *Chapman Investment Associates v. American Healthcare Management (In re American Healthcare Management, Inc.),* 900 F.2d 827, 830 (5th Cir.1990) *citing Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir.1989). Moreover, the trustee may not assume the lease unless defaults are cured or the landlord is provided with adequate assurance that the trustee will

---

**17.** First, the Debtor cites to *Braschi v. Stahl Associates Co.,* 74 N.Y.2d 201, 212–213, 544 N.Y.S.2d 784, 543 N.E.2d 49 (1989). However, that case involved a plaintiff who had resided with a deceased tenant and sought entitlement to occupy the apartment on grounds that he was a member of the deceased tenant's "family" under the RSC. The second case the Debtor relies on is *Rent Stabilization Ass'n of New York City, Inc. v. Higgins,* 83 N.Y.2d 156, 173, 608 N.Y.S.2d 930, 630 N.E.2d 626 (1993). The issue before this court was whether certain regulations "en-

larging the class of 'family members' entitled to succeed to a rent-regulated apartment *on the death or departure of the tenant of record* " were unconstitutional takings of private property without just compensation. *See id.* at 164, 608 N.Y.S.2d 930, 630 N.E.2d 626. (emphasis added). The Debtor also cites *23 Jones Street Associates v. Keebler–Beretta,* 284 A.D.2d 109, 726 N.Y.S.2d 30, 31 (1st Dep't 2001). In that case, a tenant sought possession of a rent-stabilized apartment after her husband, the tenant of record, had died. *See id.*

promptly cure all defaults. 11 U.S.C. § 365(b)(1)(A). The trustee also must provide the landlord with "adequate assurance of future performance." 11 U.S.C. § 365(b)(1)(B).

Courts may, and often do, extend the 60 day period "for cause." 11 U.S.C. § 365(d)(1). When determining whether to grant extensions, courts consider what have come to be known as the *Burger Boys* factors. These factors include whether:

(1) the debtor was paying for the use of the property;

(2) the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

(3) the lease is the debtor's primary asset; and

(4) the complexity of the case warrants the requested extension.

*See South Street Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys),* 94 F.3d 755 (2d Cir.1995). Here, the Landlord and Trustee entered into a series of stipulations which I so ordered extending the Trustee's time to assume or reject the lease.[18] The Debtor asserts that these stipulations are improper, and consequently ineffective, because the proposed stipulations were not made on notice to the Debtor by motion and because there was a gap in the time period between the expiration of the extension granted by the Second Stipulation and the proposed Third Stipulation.

The Debtor incorrectly asserts that Bankruptcy Rules 6006 and 9014(a) require that the proposed stipulations should have been brought by motion, with notice to the Debtor and a hearing. Extensions of the 60–day grace period in a chapter 7 case do not require a motion when as here, the Landlord, the very party Congress was seeking to protect, is a party to the stipulation. Moreover, because only the chapter 7 trustee, rather than the debtor, is authorized to assume the lease, the stipulation between the Landlord and Trustee was properly made. The Debtor misapplies the Bankruptcy Rules and the caselaw upon which it relies. Specifically, the Debtor relies on *Burger Boys* for the proposition that extensions require notice, a motion and hearing. The Debtor confuses the requirements for *assumption* of leases with the requirements of *extensions of the time* within which assumptions may be made. *Burger Boys*, however, clearly notes the distinction. The *Burger Boys* court held only that a request for "*assumption of a lease* must be brought pursuant to a motion," with notice to the "party against whom relief is sought" and a hearing, in accordance with Bankruptcy

---

18. On January 2, 2001, pursuant to a so ordered stipulation between the Trustee and the Landlord (the "First Extension"), the Trustee's time to assume or reject the Lease was extended until April 30, 2001. The Trustee's time was further extended pursuant to ten additional so ordered stipulations: the Second Stipulation (dated May 4th and May 7th) so ordered on May 10, 2001 extended the time until June 29, 2001; the Third Stipulation so ordered on July 24, 2001 (dated July 16, 2001) extended the time, *nunc pro tunc*, until October 30, 2001; the Fourth Stipulation so ordered on November 11, 2001 extended the time until January 31, 2002; the Fifth Stipulation so ordered on January 25, 2002 extended the time until April 30, 2002; the Sixth Stipulation so ordered on April 22, 2002 extended the time until August 30, 2002; the Seventh Stipulation so ordered on August 13, 2002 extended the time to November 31, 2002; the Eighth Stipulation so ordered on November 24, 2002 extended the time to January 3, 2003; the Ninth Stipulation so ordered on December 13, 2002 extended the time until April 4, 2003; the Tenth Stipulation so ordered on March 17, 2003 extended the time until June 30, 2003 and the Eleventh Stipulation so ordered on June 10, 2003 extended the time until September 30, 2003.

Rules 6006 and 9014.[19] *Id.* at 763. The court did not hold that requests for an extension of time be similarly brought by motion and upon notice. In fact, although the court vacated the district court's decision allowing the debtor to assume the lease, it **affirmed** the district court's decision to grant a third extension. *See id.* at 763.

Further, in deciding this precise issue, the Fifth Circuit in *In re American Healthcare Management, Inc.* explicitly held that "when a statute gives a court discretion to extend the time in which a party is required to act, the court has authority to grant such an extension without affording other parties notice and a hearing." *In re American Healthcare Management, Inc.*, 900 F.2d at 831. The court adopted the reasoning that "an order extending the time for a debtor to assume or reject a lease merely preserves the status quo, and is entered in the routine administration of the court," and clearly held that "neither section 365(d)(4) nor Rules 6006(a) and 9014 require notice and a hearing before a bankruptcy court grants an extension of time in which a lessee may assume or reject its leases." *Id.* at 833. As such, the Debtor was not entitled to notice of the extension stipulations between the Trustee and the Landlord.[20]

The Debtor also challenges the propriety of the stipulations on grounds that the Third Stipulation was not so ordered before the expiration of the extension deadline granted in the Second Stipulation. A flexible interpretation of section 365(d) enables courts to further congressional intent to protect landlords. *See In re American Healthcare Management, Inc.*, 900 F.2d at 829. In the instant case, (1) the Debtor did not pay rent for the first nine months following the Petition Date,[21] which includes the time period covered by the challenged Third Stipulation; (2) the Debtor was fully aware of these stipulations, never objected until nearly two years later, and even now fails to demonstrate, much less assert, any harm or prejudice suffered by the Debtor as a result of the challenged extension; and (3) the Landlord signed the so ordered stipulations. Accordingly, the Debtor is in no position to challenge the so ordered stipulations. The Stipulations between the Landlord and Trustee properly extended the Trustee's time to assume or reject the Debtor's Lease.

## Bankruptcy Rule 7001(1) Does Not Require the Trustee's Motion to Be Brought in the Form of an Adversary Proceeding

Finally, the Debtor asserts that the Motion should have been brought pursuant to an adversary proceeding, rather than by motion, because "Rule 7001 ... requires that a proceeding seeking to compel turnover of property *with certain inapposite exceptions*, must be commenced and prose-

---

**19.** The Debtor incorrectly asserts, in bold print in its Objection, that *Burger Boys* stands for the proposition that extensions require notice and a motion. *See* Objection at ¶ 115.

**20.** *See also, Edward J. Debartolo Corp. v. Child World, Inc.; Net Realty Holding Trust v. Child World, Inc. (In re Child World)*, 146 B.R. 89, 92 (S.D.N.Y.1992) (holding that *ex parte* extensions of time to assume or reject leases "had for all practical purposes, only an administrative rather than a substantive effect,"

and do not violate due process unless the party asserting improper procedure can demonstrate that "they were substantially or irreparably injured.").

**21.** The failure to pay post-petition rent and the failure to cure pre-petition rent defaults, without some form of adequate protection for the Landlord, would most likely have prevented the Trustee from assuming the Lease at that time.

cuted through the legally required means of an adversary proceeding lawsuit (not by motion)." *See* Objection at ¶ 122 (*emphasis added*). Bankruptcy Rule 7001 provides, in relevant part, that:

> An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: (1) a proceeding to recover money or property, *other than a proceeding to compel the debtor to deliver property to the trustee,* or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002.

Fed. R. Bankr.P. 7001(1) (*emphasis added*).

The Debtor's position is incorrect because the exception to Bankruptcy Rule 7001 is clearly not inapposite. In fact, it specifically allows a trustee to compel the debtor to turnover property of the estate by motion rather than by an adversary proceeding. Bankruptcy Rule 7001(1) was amended in 1987 to add an exception to clause (1) to specifically provide that "[a] trustee may proceed by motion to recover property from the debtor." *See* 2003 Advisory Committee Note to Fed.R. Bankr.P. 7001(1). Section 521(4) of the Bankruptcy Code makes it the duty of the debtor to surrender to the trustee "all property of the estate." 11 U.S.C. § 521(4). Because the Debtor's interest in the Lease is property of the estate, the Trustee is not required to commence an adversary proceeding to compel the Debtor's turnover. "Where the debtor fails or refuses to surrender property to which the trustee is entitled, the amendment makes it less cumbersome for the trustee to compel the debtor to deliver such property." *See* 10 COLLIER ON BANKRUPTCY, ¶ 7001.02[5] at 7001–9 (Lawrence P. King ed. 15th ed.2001). Accordingly, the Trustee was

not required to bring its Motion pursuant to an adversary proceeding.

**Conclusion**

For the reasons stated above, the Objection filed on behalf of the Debtor and DeMars is overruled and the relief sought in the Trustee's Motion is granted. The Trustee is authorized to assume and assign the Lease to the Landlord for consideration of $150,000, with the Premises to be conveyed vacant and free of any and all occupants. Pursuant to Bankruptcy Code sections 521(4), 365 and 105(a), the Trustee is authorized to take all steps necessary to effectuate the assumption and assignment of the Lease to the Landlord and to take appropriate steps to convey the Premises free and clear of any and all occupants. The Debtor and DeMars are directed to vacate the Premises within ten days of the entry of this order. In the event the Debtor or any other individuals currently occupying the Premises do not voluntarily vacate the Premises in accordance with this Order, the Trustee is hereby authorized to settle an order on three days' notice by hand or overnight delivery upon the Debtor at the Premises and upon her counsel, directing the United States Marshals Service to effectuate the terms of the assignment of the Lease by evicting all occupants from the Premises.

IT IS SO ORDERED.