**ORGANIZACION JD LTDA., and Manufacturas JD, Ltda., Plaintiffs–Appellants,**

v.

**U.S. DEPARTMENT OF JUSTICE; Drug Enforcement Administration of the United States of America; Banco Atlantico, S.A.; The Bank of New York, Defendants–Appellees.**

No. 1498, Docket 93–6019.

United States Court of Appeals, Second Circuit.

Argued May 3, 1993.

Decided Feb. 24, 1994.

Isidoro Rodriguez, Barranquilla, Columbia S.A., for plaintiffs-appellants.

Gary R. Brown, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Varuni Nelson, Jennifer C. Boal, Arthur P. Hui, Asst. U.S. Attys., of counsel), for defendants-appellees U.S. Dept. of Justice and Drug Enforcement Admin. of the U.S. of America.

Mark S. Sullivan, New York City (Townley & Updike, of counsel), for defendant-appellee Banco Atlantico, S.A.

Michael D. Povman, New York City, for defendant-appellee The Bank of New York.

Before: MESKILL, WALKER, Circuit Judges, and MOTLEY, District Judge.*

* The Honorable Constance Baker Motley, United States District Judge for the Southern District of New York, sitting by designation.

PER CURIAM:

The facts of this case have been set forth thoroughly in a related appeal previously decided by a panel of this court, familiarity with which is assumed. *See United States v. Daccarett*, 6 F.3d 37 (2d Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994). *Daccarett* centered around the 1990 government seizure of numerous electronic fund transfers ("EFTs") alleged to involve the proceeds of illicit drug trafficking, totalling over $12 million. After a two-month trial, a jury found eighteen of twenty-two seized amounts forfeitable. Notably, the jury found that the amounts claimed by the appellants in this case, Manufacturas J.D. Ltda. and Organizacion J.D. Ltda., were not traceable proceeds of illegal money-laundering and narcotics transactions. *See United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith*, 801 F.Supp. 984, 993 (E.D.N.Y.1992) (Weinstein, *J.*) ("*All Funds*") (affirmed by *Daccarett, supra*).

The intended recipients of these various money transfers did not sit by quietly when their funds were seized. These parties sued the intermediary banks for violations of various federal and state statutes. The district court granted summary judgment for the banks, holding that they could not be held liable for following governmental orders respecting claimed governmental funds. *See Manufacturas Int'l, Ltda v. Manufacturers Hanover Trust Co.*, 792 F.Supp. 180 (E.D.N.Y.1992) (Weinstein, *J.*). In another action, various recipients sued the government attorneys who had ordered the banks to seize the funds; the same district judge dismissed this complaint for failure to state a claim. *See Abuchaibe Hnos. v. Maltz*, No. 92 Civ. 528 (E.D.N.Y. Mar. 11, 1992) (oral decision).

Plaintiffs in this case are two of the appellants from the *Daccarett* case, which affirmed the district court's rulings in the *All Funds* case. Before trial in the *All Funds* case, plaintiffs brought a six-count civil complaint against two government agencies and two private banks charging them with statutory and constitutional violations arising from the seizures of the EFTs. Prior to the jury trial in the underlying *All Funds* case, the district court (Jack B. Weinstein, *Judge* ) granted the defendants' motion to dismiss the plaintiffs' complaint, stating from the bench that its ruling was based on the reasons stated in its two earlier decisions in *Manufacturas International, Ltda v. Manufacturers Hanover Trust Co., supra*, and *United States v. All Funds on Deposit in Any Accounts Maintained at Merrill, Lynch, Pierce, Fenner & Smith*, No. CV 90–2510, 1992 WL 37087, 1992 U.S.Dist. LEXIS 1881 (E.D.N.Y. Feb. 19, 1992) (a pretrial ruling denying the claimants' motions to vacate the district court's earlier finding of probable cause for the seizures and refusal to suppress certain evidence). Plaintiffs now appeal.

In *Daccarett*, this court comprehensively explored the legal issues surrounding the *All Funds* seizures and affirmed the rulings of the district court. Consequently, our discussion of the issues raised by this appeal is brief. For the reasons stated below, we affirm in part the dismissal of the complaint and remand for further proceedings consistent with this opinion.

*The Civil Complaint*

Counts One and Six of the plaintiffs' civil complaint allege violations of the Fourth and Fifth Amendments of the United States Constitution. This court in *Daccarett* affirmed the district court's ruling that the seizures did not violate the Fourth Amendment of the Constitution, *see Daccarett*, 6 F.3d at 49, and that ruling controls here.

Although *Daccarett* did not discuss the Fifth Amendment, the Supreme Court's latest pronouncement in this area makes it clear that civil forfeitures can violate the Fifth Amendment as well. *See United States v. James Daniel Good Real Property*, — U.S. ——, —— - ——, 114 S.Ct. 492, 499–500, 126 L.Ed.2d 490 (1993). In *James Daniel Good*, the Court considered whether, in the absence of exigent circumstances, the Fifth Amendment prohibited the government in a civil forfeiture case from seizing assets without first providing notice and an opportunity to be heard. The Court held that the Fifth Amendment was implicated in civil forfeitures. *Id.* at ——, 114 S.Ct. at 500. Ana-

lyzing the civil forfeiture procedure under the three-pronged balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court ruled that absent exigent circumstances, the government cannot seize an individual's real property via the civil forfeiture mechanism without providing predeprivation notice and an opportunity to be heard. *Id.* —— U.S. at —— – ——, 114 S.Ct. at 501–05.

■ Because *James Daniel Good* involved real property, the Court did not address whether personal property is similarly protected by the Fifth Amendment. We need not decide this issue here, however, because the seizures in this matter plainly involved exigent circumstances, and the *James Daniel Good* Court made clear that seizures involving exigent circumstances are exempted from predeprivation notice and hearing requirements. *Id.* at ——, 114 S.Ct. at 500. As the *Daccarett* court reasoned, "[b]ecause the property at issue was fungible and capable of rapid motion due to modern technology, we are satisfied that exigent circumstances were present here." *Daccarett*, 6 F.3d at 49. Thus, the plaintiffs can claim no Fifth Amendment violation.

■ Count Two of the complaint alleged two distinct violations of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510 *et seq.*, which govern interception of wire electronic communications, and §§ 2701 *et seq.*, which govern access to certain stored electronic records. First, plaintiffs claim that they are entitled to civil damages under § 2520 for the alleged unlawful "interception" of the EFTs. However, the *Daccarett* court ruled that the seizures did not constitute "interceptions" under the ECPA because no "device" was used, as required under 18 U.S.C. § 2510(4). *See Daccarett*, 6 F.3d at 54. Because no "interceptions" occurred, plaintiffs have no cause of action under § 2520.

■ Second, plaintiffs claim they are entitled to civil damages under § 2707(a), which provides a civil cause of action for the unlawful access to stored communications in violation of § 2701. The statute states:

**(a) Cause of action.**—Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or customer aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2707(a). We agree with the district court that the defendant banks cannot be held civilly liable under § 2707(a) for a violation of § 2701 because their good faith reliance on a court warrant or order is a complete defense under § 2707(d)(1). *See Manufacturas Int'l, Ltda v. Manufacturers Hanover Trust Co.*, 792 F.Supp. at 192–93.

However, the government agencies' potential liability under § 2707 is a different matter. Few courts have addressed the complex issues surrounding the government's possible liability under § 2707(a). We note that the district court's two decisions upon which it relied when ruling from the bench to dismiss the plaintiffs' complaint had no occasion to discuss the government's liability under § 2707(a).

■ As an initial matter, we address whether a governmental entity can be held civilly liable under § 2707(a). To our knowledge, only two district courts have discussed this question, both of which suggested that a governmental "entity" may be liable under § 2707. *See PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F.Supp. 808, 823 (D.N.J.1993); *Bodunde v. Parizek*, No. 93–C–1464, 1993 WL 189941, 1993 U.S.Dist. LEXIS 7365 (N.D.Ill. May 27, 1993). Those courts concluded that prior to the 1986 enactment of the ECPA, the definition of "person" in § 2510(6) already included business entities such as corporations and partnerships, and that in order to give full meaning to the new statutory language, "entity" must be taken to mean governmental entity. They have found support for this conclusion in legislative history that specifically references "governmental entities" as potentially liable under § 2707(a). *See* S.Rep. No. 541, 99th Cong., 2d Sess. 43 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3597 (stating that an ag-

grieved party "may recover from any person or entity—including governmental entities—who knowingly or intentionally violated this chapter"). We find the analyses of these courts persuasive and hold that governmental "entities" are subject to liability under § 2707(a).

Apart from this determination, two issues remain: whether the particular plaintiffs in this case are able to bring an action under § 2707(a), and whether the government agents impermissibly violated the ECPA. Because the resolution of these issues requires a more complete factual record, we remand the § 2707(a) claim under Count Two against the government defendants for an initial determination by the district court.

We offer several observations for the benefit of the district court on remand. First, § 2707(a) confines those who may recover damages to "any provider of electronic communication service, subscriber, or customer aggrieved." Plaintiffs here were to be ultimate beneficiaries of sequential electronic fund transfers. Whether plaintiffs fit within the class of individuals who may bring suit under § 2707(a) is an open question that might well turn on the issue of whether the term "customer" applies to the plaintiffs in the factual circumstances presented here.

Second, if the district court should find that plaintiffs fit within the class of "any provider of electronic communication service, subscriber, or customer aggrieved" under § 2707, a matter as to which we express no opinion, then the court must decide whether the governmental agents in this case complied with the ECPA, or were somehow excused from doing so. Section 2703 of the ECPA lays out the requirements for governmental access to an electronic communication, satisfaction of which would avoid liability under § 2707(a). Because we believe the district court is in the best position to consider these questions and make appropriate findings of fact in the first instance on remand, we take no position on the merits of this aspect of plaintiffs' § 2707(a) claim against the government.

■ Counts Three and Four of the complaint alleged breach of contract claims against the defendant banks. Plaintiffs claim that by failing to forward the wire transfers, the intermediary banks failed to follow the wire transfer rules and regulations of the Federal Reserve System and the Clearing House Interbank Payment System, and that this "breach of contract" caused them damage. In essence, the plaintiffs claim third-party beneficiary status to the contract between the intermediary banks and the wire transfer systems.

Irrespective of whether the plaintiffs can even make out a claim as a third-party beneficiary under New York law, the private intermediary banks cannot be subject to a damage action because the intervening government actions in ordering the seizures of the EFTs rendered any enforceable contract impossible to perform. *See, e.g., RSB Mfg. Corp. v. Bank of Baroda,* 15 B.R. 650 (S.D.N.Y.1981) ("The defense of impossibility extends to judicial action as long as the party seeking to be excused has not caused or failed to prevent the judicial action."); *Hamilton Rubber Mfg. Co. v. Greater N.Y. Carpet House, Inc.,* 47 N.Y.S.2d 210, 211 (N.Y.Sup. Ct.1944), *aff'd,* 269 A.D. 681, 53 N.Y.S.2d 954 (1st Dep't 1945); Restatement (Second) of Contracts § 264 (1981). Accordingly, Counts Three and Four were properly dismissed.

■ Finally, Count Five of the complaint alleged violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401 *et seq.* However, as this court explained in *Daccarett,* the RFPA was "meant to protect those who maintain accounts in their names at financial institutions," and because the plaintiffs "never *maintained* accounts in their names at the intermediary banks," there was no violation of the RFPA. 6 F.3d at 51–52 (emphasis in original). Thus, the RFPA provides no basis for relief and Count Five, too, was properly dismissed.

*Conclusion*

For the foregoing reasons, we affirm the dismissal of the civil complaint on Counts One, Three, Four, Five, and Six, and Count Two in part. We vacate and remand that part of Count Two which alleged a claim for civil damages against the government under

§ 2707(a) for further proceedings consistent with this opinion.

Parties to bear their own costs.