12-4131-bk
*Santiago-Monteverde v. Pereira*

# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2013
No. 12-4131-bk

IN RE: MARY VERONICA SANTIAGO-MONTEVERDE,
*Debtor.*

MARY VERONICA SANTIAGO-MONTEVERDE,
*Debtor-Appellant,*

*v.*

JOHN S. PEREIRA, CHAPTER 7 TRUSTEE,
*Trustee-Appellee.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 12 CV 4238 — P. Kevin Castel, *Judge.*

————

ARGUED: SEPTEMBER 23, 2013
DECIDED: MARCH 31, 2014

————

Before: SACK, B.D. PARKER, and RAGGI, *Circuit Judges*.

_____

Appeal from a decision of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*) affirming a bankruptcy court's order striking a debtor's claim of entitlement to an exemption of property from her estate. The debtor contends that the value of her rent-stabilized lease was exempt from her bankruptcy estate as a "local public assistance benefit" within the meaning of New York Debtor and Creditor Law § 282(2). The bankruptcy court and district court determined that the value of a rent-stabilized lease did not fall within the exemption. We conclude that the application of § 282(2) to New York's rent stabilization laws raises a question of New York State law that is appropriately certified to the New York Court of Appeals.

Accordingly, we certify the question and stay resolution of this appeal.

_____

RONALD J. MANN, New York, NY (Kathleen G. Cully, Kathleen G. Cully PLLC, New York, NY, *on the brief*), *for Debtor-Appellant*.

J. DAVID DANTZLER, JR. (John P. Campo, Eric L. Unis, *on the brief*), Troutman Sanders LLP, New York, NY, *for Trustee-Appellee*.

Ira L. Herman, Thompson & Knight LLP, New York, NY, *for Amicus Curiae New York City Bankruptcy Assistance Project, supporting Debtor-Appellant*.

Carolyn E. Coffey (*of counsel* to Jeanette Zelhof), MFY Legal Services, Inc., New York, NY, *for Amicus Curiae MFY Legal Services, Inc., supporting Debtor-Appellant.*

————

BARRINGTON D. PARKER, JR., *Circuit Judge*:

In this appeal we consider whether the value inherent in a New York City tenant's rent-stabilized lease as a consequence of the protections afforded by New York's Rent Stabilization Code ("RSC"), N.Y. Comp. Codes R. & Regs. tit. 9, §§ 2520.1 *et seq.*, make the lease, or some portion of its value, exempt from the tenant's bankruptcy estate as a "local public assistance benefit" within the meaning of New York Debtor and Creditor Law ("DCL") § 282(2). We conclude that the New York Court of Appeals is better positioned to resolve this unsettled issue of New York law and, consequently, we certify it to that Court.

## I. BACKGROUND

At some point prior to the mid-1970's, Debtor-Appellant, Mary Veronica Santiago-Monteverde, signed a lease with her husband for an apartment in lower Manhattan. Following the enactment of New York's rent stabilization law in 1974, the apartment became rent-stabilized. The RSC "regulat[es] rents and provid[es] occupants with statutory rights to tenancy renewals" as well as occupancy and anti-eviction protections. *Manocherian v. Lenox Hill Hosp.*, 84 N.Y.2d 385, 389 (1994); *see* N.Y. Comp. Codes R. & Regs. tit. 9, §§ 2520.1 *et seq.*; N.Y.C. Admin Code §§ 26-501 *et seq.* New York State law also authorizes municipalities to formulate and apply rent stabilization regulations and New York City has done so. N.Y. Unconsol. Law § 8605; N.Y.C. Admin Code §§ 26-501 *et seq.*

After the death of her husband, Santiago-Monteverde experienced financial difficulties and eventually sought relief under Chapter 7 of the Bankruptcy Code. During the pendency of bankruptcy proceedings, she has continued to pay her rent and has remained current on her lease obligations. In her initial bankruptcy filing, she listed her apartment lease on Schedule G as a standard unexpired lease. Shortly thereafter, the owner of her apartment approached the Trustee-Appellee, John S. Pereira, and offered to buy Santiago-Monteverde's interest in the lease. When Pereira advised Santiago-Monteverde that he planned to accept the offer, she amended her filing to list the value of her lease on Schedule B as personal property exempt from the bankruptcy estate under DCL § 282(2) as a "local public assistance benefit."

The Trustee moved to strike Santiago-Monteverde's claim of exemption. The bankruptcy court granted the motion on the ground that the rent-stabilization program did not qualify as a "local public assistance benefit." *In re Santiago-Monteverde*, 466 B.R. 621 (Bankr. S.D.N.Y. 2012). The bankruptcy court noted that "all of the items listed in section 282(2)," such as social security, disability, and unemployment benefits, "are payments of one sort or another that a debtor has the right to receive or in which the debtor has an interest." *Id.* at 623-24. In contrast, the bankruptcy court concluded that the "benefit of paying below market rent . . . is a quirk of the regulatory scheme in the New York housing market, not an individual entitlement" comparable to the other items in § 282(2). *Id.* at 625.

Santiago-Monteverde appealed to the district court. The district court affirmed the bankruptcy court. The district court concluded that it was "not necessary to reach the question of whether" the exempt benefits were limited only to payments to a debtor, because "the value in securing a lawful termination of the

rent-stabilized lease . . . is a collateral consequence of the regulatory scheme and not a 'local public assistance benefit.'" *In re Santiago-Monteverde*, No. 12 Civ. 4238 (PKC), 2012 WL 3966335, at *2 (S.D.N.Y. Sept. 10, 2012). The district court also adverted to the absence of any evidence that the legislature had "intended to confer upon the tenant a public assistance benefit consisting of the value of terminating the rent-stabilization regime." *Id.*

Santiago-Monteverde appeals. Her principal contention is that the protections of the rent stabilization program, and the concomitant value created in her rent-stabilized lease, amount to a "local public assistance benefit" that is exempt from her bankruptcy estate.

## II. DISCUSSION

"We exercise plenary review over a district court's rulings in its capacity as an appellate court in bankruptcy, independently reviewing the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*." *In re Quebecor World (USA) Inc.*, 719 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks omitted). Where the case requires us to interpret state law, "[w]e review the district court's interpretation and application of state law *de novo*." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (internal quotation marks omitted), *certified question accepted* 22 N.Y.3d 1017 (Dec. 12, 2013).

Section 522(b) of the Bankruptcy Code permits the debtor to exempt certain specified property from the bankruptcy estate. *CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 258 (2d Cir. 2009). Section 522(d) of the Code provides a list of categories of property that a debtor may exempt. However, the Code also permits states, if they choose, to create their own lists of exemptions as an alternative to the exemptions found in Section 522(d). "New York has 'opted out' of the federal exemption scheme, . . . choosing instead to

provide its own exclusive set of permissible exemptions for debtors domiciled in the state." *Id.* Under New York law, a debtor may exempt, among other things, her "right to receive or . . . interest in . . . a social security benefit, unemployment compensation or *a local public assistance benefit*." N.Y. Debt. & Cred. Law § 282(2) (emphasis added).

The question confronting us is whether the rent stabilization regime provides such a benefit. The New York Court of Appeals has explained that the rent stabilization program was created "to ameliorate, over time, the intractable housing emergency in the City of New York" by "protect[ing] dwellers who could not compete in an overheated rental market, through no fault of their own." *Manocherian*, 84 N.Y.2d at 389; *see also id.* (rent stabilization created "to remedy a persisting emergency housing shortage").

The RSC "regulate[s] the two terms at the core of the landlord-tenant relationship: rent and duration." *Resolution Trust Corp. v. Diamond*, 18 F.3d 111, 119 (2d Cir. 1994), *cert. granted, judgment vacated on other grounds sub nom. Solomon v. Resolution Trust Corp.*, 513 U.S. 801 (1994) and *cert. granted, judgment vacated on other grounds sub nom. Pattullo v. Resolution Trust Corp.*, 513 U.S. 801 (1994). "The regulations govern the initial rent, restrict rent increases, mandate lease renewal, and, upon the tenant's vacating of the premises, allow the tenancy to pass statutorily to certain members of the tenant's household," if certain conditions are met. *Id.* (internal citations omitted). "Landlord compliance with this scheme is enforced chiefly by limiting the grounds for eviction . . . ." *Id.*

Under the RSC, these terms substantially favor tenants, requiring lease renewal in almost all circumstances, and affording strong anti-eviction protections. The implementing regulations state that "[a]s long as the tenant continues to pay the rent to which the

owner is entitled, no tenant shall be denied a renewal lease or be removed from any housing accommodation by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, except on one or more of the grounds specified in this Code." N.Y. Comp. Codes R. & Regs. tit. 9, § 2524.1(a). The "grounds specified in this Code" are limited, and do not mention a debtor's bankruptcy. *See id.* §§ 2524.3, 2524.4. 2524.5. As a result of these provisions, rent-stabilized tenants who have not defaulted on their leases enjoy significant protections. Santiago-Monteverde's main contention is that this constellation of protections adds "value" to a rent stabilized lease above the value of a market rate lease, and that the concomitant value of these protections amounts to an exempt "local public assistance benefit" under DCL § 282(2).

A bankruptcy trustee is authorized to "assume or reject any . . . unexpired lease of the debtor." 11 U.S.C. § 365(a). We have held that a rent-stabilized tenancy is the product of a "lease" under federal law, *Diamond*, 18 F.3d at 119, and thus would appear to be covered by § 365, *but see B.N. Realty Assocs. v. Lichtenstein*, 238 B.R. 249, 254-56 (S.D.N.Y. 1999) (quoting Bankruptcy Court's conclusion that rent-stabilized leases fell within an exception to § 365, but resolving the case on other grounds); *but see also* Brief of *Amicus Curiae* MFY Legal Services at 14-20 (arguing that the inability of a creditor to reach the value of the debtor's rent stabilized apartment outside of bankruptcy bars the trustee from assuming the lease, *see* 11 U.S.C. § 365(a), (c)).

Moreover, New York cases have assumed that a trustee possesses the authority under 11 U.S.C. § 365 to assume or reject a rent-stabilized debtor's lease and have discussed the effect of a rejection. *See 187 Concourse Assocs. v. Bunting*, 670 N.Y.S.2d 686, 688 (Civ. Ct. 1997) (citing several cases from New York courts discussing

the impact of a bankruptcy trustee's rejection of a rent-stabilized lease).  Additionally, several bankruptcy courts have held that a trustee's authority under § 365 extends to rent-stabilized leases.  *See In re Toledano*, 299 B.R. 284, 292 (Bankr. S.D.N.Y. 2003); *In re Yasin*, 179 B.R. 43, 49 (Bankr. S.D.N.Y. 1995).  Thus, there is (albeit limited) authority for the proposition that a rent-stabilized debtor's lease may be assumed and assigned by the trustee pursuant to 11 U.S.C. § 365(a).

In this appeal, however, we must consider an additional and analytically different issue: May a rent-stabilized tenant prevent the assumption and assignment of his or her lease by claiming that the lease (or its value) is a "local public assistance benefit" exempt from the bankruptcy estate?  The Trustee implicitly argues that his assumption and assignment of the lease eliminate the protections afforded under the RSC and, therefore, that he may sell the lease to the landlord for the value that exists in the elimination of those protections.  Santiago-Monteverde argues that the lease (or its value) is a "local public assistance benefit" because the value of the lease (in whole or in part) is traceable to the protections afforded to her under the RSC.  As noted by the parties and the *amici*, resolving these questions may implicate other questions of New York law, including whether a tenant's rights under the RSC are property or personal rights.  *See, e.g.,* Brief of *Amicus Curiae* New York City Bankruptcy Assistance Project at 7-13 (arguing that rent-stabilized tenant's rights are statutory personal rights rather than property rights that, therefore, cannot be administered as part of the bankruptcy estate).

No New York cases directly address these contentions.  New York courts addressing the interaction of the Bankruptcy Code and the RSC have indicated that the rejection of a rent-stabilized lease by the trustee does not void or terminate the lease, and does not eliminate the protections of the RSC.  *See 187 Concourse Assocs.*, 670

N.Y.S.2d at 688 (explaining that "bankruptcy lease rejection neither voids the lease, nor terminates the lease" and that "[t]he debtor-tenant, with a rejected unexpired rent stabilized lease, may continue to occupy the premises, unless a properly instituted summary holdover proceeding occurs" (citations omitted)). But these decisions do not address the assumption and assignment of a lease and, thus, do not resolve this appeal.

No New York courts have interpreted the phrase "local public assistance benefit" in the context of DCL § 282(2). Although two bankruptcy court decisions have permitted the assumption and assignment of rent-stabilized leases or rights similar to RSC protections, with the consequent elimination of tenant protections, neither decision addressed the argument presented in this appeal for an exemption under DCL § 282(2). *See In re Toledano*, 299 B.R. at 294; *In re Stein*, 281 B.R. 845, 848 (Bankr. S.D.N.Y. 2002).

Given the significance of these issues to landlords and tenants, as well as the complete absence of authority concerning the impact of DCL § 282(2) on rent stabilized leases, we hesitate to attempt to resolve these issues without first obtaining the views of the New York Court of Appeals.

### C. CERTIFICATION

Pursuant to Rule 27.2 of our Local Rules and New York State law, we may certify "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a);Local R. 27.2; *see also* N.Y. Const. art. VI, § 3(b)(9) (directing the New York Court of Appeals to adopt a rule permitting it to answer questions of New York law certified to it by, among other courts, "a court of appeals of the United States").

"Before certifying such a question, we must answer three others: (1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us." *In re Thelen LLP*, 736 F.3d at 224 (internal quotation marks omitted).  In this case, we answer all three questions in favor of certification.

First, neither the Court of Appeals nor lower New York courts have addressed (1) the meaning of "local public assistance benefit" in the context of DCL § 282(2), (2) whether the protections provided by the RSC are personal or property rights, or (3) the effect of the assignment of a tenant's lease during bankruptcy on her rights under the RSC.  This prevents us from making any confident prediction of how the New York Court of Appeals would resolve this issue.

Second, the issue of the proper interpretation and interaction of the DCL and RSC is "of importance to the state" and will in fact involve "value judgments and public policy choices" concerning the existence and scope of property rights, as well as the application of emergency housing legislation that was carefully designed to balance the rights and interests of renters and building owners. *Manocherian*, 84 N.Y.2d at 389-90.

Finally, the resolution of this question will determine the outcome of this appeal, as it is the only question presented to this Court.

## III. CONCLUSION

The following question is hereby certified to the Court of Appeals of the State of New York pursuant to 2d Cir. Local R. 27.2 and N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.

Whether a debtor-tenant possesses a property interest in the protected value of her rent-stabilized lease that may be exempted from her bankruptcy estate pursuant to New York State Debtor and Creditor Law Section 282(2) as a "local public assistance benefit"?

In certifying this question, we understand that the New York Court of Appeals, if it accepts the case, may reformulate or expand the certified question as it deems appropriate. We do not intend this articulation of the above specified question to limit the scope of the analysis by the Court of Appeals.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate together with a complete set of briefs, appendices, and the record filed by the parties in this Court. This panel will retain jurisdiction of the present appeal for resolution after disposition of the certified question by the New York Court of Appeals or once that court declines to accept certification.