Gevorkyan v. Judelson

In the

# United States Court of Appeals
### For the Second Circuit

————

September Term, 2016

No. 15-3249-cv

KARINE GEVORKYAN, ARTHUR BOGORAZ,
INNA MOLDAVER, AND SAM MOLDAVER,
*Plaintiffs-Appellants*,

*v.*

IRA JUDELSON,
*Defendant-Appellee.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 13-cv-08383 (RMB) — Richard M. Berman, *Judge*.

————

Submitted: September 14, 2016
Decided: November 15, 2016

————

Before: JACOBS, PARKER, and LIVINGSTON, *Circuit Judges*.

————

Plaintiffs-Appellants appeal from a judgment of the United States District Court for the Southern District of New York (Berman, *Judge*). Following trial, the district court concluded that Defendant-Appellee Ira Judelson, a bail bond agent, could retain the premium

paid to him by the Appellants notwithstanding the fact that, following a bail sufficiency hearing conducted pursuant to § 520.30 of the New York Criminal Procedure Law ("NYCPL"), the state court declined to accept the bond and the criminal defendant was never released from custody. We conclude that whether a bail bond agent may retain a premium following the rejection of the bond raises an unresolved question of New York law that is appropriately certified to the New York Court of Appeals. Accordingly, we certify the question and stay resolution of this appeal.

————

ANDREW LAVOOTT BLUETONE, New York, NY, *for Plaintiffs-Appellants Karine Gevorkyan, Arthur Bogoraz, Inna Moldaver, Sam Moldaver*.

JONATHAN SVETKEY, Waters & Svetkey, New York, NY, *for Defendant-Appellee Ira Judelson*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

In 2011, Plaintiff-Appellant Arthur Bogoraz was arrested in Puerto Rico and ultimately indicted in Kings County, New York in connection with an alleged multi-million dollar insurance fraud. His bond was set at $2,000,000. Bogoraz, with the assistance of his wife and family friends, sought to obtain a bail bond to secure his pre-trial release. After two agencies declined to issue a bond, Plaintiffs approached Defendant-Appellee Ira Judelson, a licensed bail bond agent affiliated with the International Fidelity Insurance Company ("International Fidelity"). Plaintiff-Appellant Karine Gevorkyan submitted an application for the $2,000,000 bond. International Fidelity accepted the application and the parties executed an Agreement of Indemnity (the "Agreement"). Pursuant to the Agreement, Plaintiffs paid Bogoraz, in trust for International Fidelity, a $120,560 premium to obtain the bond.

On March 28, 2012, Judelson posted the bail bond with the state court as was required by New York law. That court then elected to conduct a bail sufficiency hearing pursuant to NYCPL § 520.30 which provides:

> Following the posting of a bail bond . . . the court may conduct an inquiry for the purpose of determining the reliability of the obligors or the person posting cash bail, the value and sufficiency of any security offered, and whether any feature of the undertaking contravenes public policy. . . .
>
> At the conclusion of the inquiry, the court must issue an order either approving or disapproving the bail.

Following the sufficiency hearing, the state court rejected the bond. Bogoraz appealed to the Appellate Division which concluded that Bogoraz "ha[d] the burden of proving by a preponderance of the evidence that the cash or collateral posted to secure a bail bond originates from a legitimate source and is not the fruit of criminal or unlawful conduct,"and that Bogoraz "failed to meet [t]his burden at the bail bond source hearing." *People ex rel. Aidala v. Warden, Rikers Island Correctional Facility*, 100 A.D.3d 667, 667 (2d Dep't 2012). Accordingly, the Appellate Division affirmed the denial of the bond, *id.*, a decision the Court of Appeals declined to review, 20 N.Y.3d 858 (Feb. 7, 2013). Bogoraz was therefore never released on bail.[1]

Plaintiffs then sought the return of the premium from Judelson. Their theory, pressed throughout this litigation, was that because bail was denied, Judelson was not entitled to retain the premium because he was never exposed to the risk that Bogoraz would not appear in court when required, which was the purpose of the premium. Judelson refused to return the funds, contending that he satisfied his contractual obligations, and thereby earned the premium, when the bond was "posted and signed" by the state court. App'x at 22.

Plaintiffs then sued for return of the premium, alleging breach of contract, unjust enrichment, and conversion. Following a bench trial, the district court entered judgment for Judelson. Having located no controlling New York precedent, the court relied on common law contract principles and concluded that the language of the Agreement was ambiguous as to whether Judelson was entitled to retain the premium. After considering testimony as to the parties' intent, the court found that the parties did not intend for the

---

[1] Bogoraz was ultimately sentenced to 3.5 to 7 years of imprisonment after pleading guilty to money laundering and fraud charges.

premium to be returned if the bond was not accepted and that Judelson was entitled to retain the premium. The court stated: "Pursuant to the terms of the Bail Bond Application, as supplemented with extrinsic evidence, Defendant is entitled to retain the bond premium in the amount of $120,260."[2]  App'x at 36. This appeal followed.

## DISCUSSION

New York regulates the bail bond industry through Article 68 of the New York Insurance Law ("NYIL").  Under Article 68, a repeat issuer of bail bonds such as Judelson must be licensed.  NYIL § 6801(b)(1).  The NYIL also strictly regulates the premium that a bail bond agent may charge for bail bond services.[3]  New York regulates the bail bond process itself pursuant to Article 520 of the NYCPL.  For example, § 520.20 regulates how a bond is properly "posted in satisfaction of bail," and § 520.30 prescribes the procedures at bail-sufficiency hearings.[4]  These provisions  of the NYIL and the NYCPL appear to be the only New York statutory provisions governing bail bonds.[5]

---

[2]  Because the $120,560 paid for the premium was $300 above the amount permitted by statute, the district court ordered a return of that amount to Plaintiffs.

[3]  "[T]he premium shall not exceed ten per centum of the first three thousand dollars [of the bond] and eight per centum of the excess amount of three thousand dollars up to ten thousand dollars and six per centum of the excess amount over ten thousand dollars."  NYIL § 6804(a).

[4]  NYCPL § 520.20(1) states: "[W]hen a bail bond is to be posted in satisfaction of bail, the obligor or obligors must submit to the court a bail bond in the amount fixed, executed in the form prescribed in subdivision two, accompanied by a justifying affidavit of each obligor, executed in the form prescribed in subdivision four."   NYCPL § 520.30 is quoted in relevant part, *supra* at 3.

[5]  Plaintiffs also point to NYIL §§ 1305 and 2131 to argue that "'[u]nearned premiums' are regulated by New York's Insurance Law."  Br. of Appellant at 17.  These provisions do not appear to be relevant.  Section 1305, although addressing the concept of "unearned premiums," only relates to the reserves to be maintained by insurers, and

The parties dispute their applicability. The Appellants contend that they require return of the premium, Judelson disputes this contention, and the district court found these sources to be "not dispositive," App'x at 37, a conclusion with which we are in accord. Although Article 68 controls the *amount* of the premium a bail bondsman may charge, nothing in that Article sheds light on when that premium is actually earned.[6] Nor is Article 68 of any assistance on the question of when, if ever, a premium paid to obtain a bond must be returned if the bond never serves the purpose for which the premium was paid.

The Appellants rely heavily on NYCPL § 520.30(3) which provides that:

> A bail bond posted in the course of a criminal action is effective and binding upon the obligor or obligors until the imposition of sentence or other termination of the action, . . . , unless prior to such termination such order of bail is vacated or revoked or the principal is surrendered, or unless the terms of such bond expressly limit its effectiveness to a lesser period.

They argue that this provision means that the bond they procured was never "effective and binding" because Bogoraz was never released from jail. However, it seems to us a stretch to construe a provision which relates to the period during which a

<hr>

§ 2131, which addresses the refund of certain unearned premiums, relates only to "rental vehicle companies, wireless communication equipment vendors and self-service storage companies."

[6] However, the fact that the premiums permitted under NYIL § 6804(a) are made directly proportional to the size of the bond indicates that the state has some interest in tying the amount of the premium to the amount of risk.

bond is subject to forfeiture, to govern the return of premiums paid on a bond that was never accepted. Suffice it to say that the provision is unhelpful on the questions before us of whether (i) a bail bond agent's retention of a premium is conditioned on the bond becoming "effective and binding," or (ii) earning a bond premium is contingent on a judicial determination that the collateral posted to secure the bond originated from a legitimate source. In short, New York's statutory scheme does not resolve the issue we confront.

Nor have Appellants identified any authoritative New York case law that requires the return of a bail bond premium upon the denial of a bond at a sufficiency hearing. What law they do cite at best requires the return of "unearned premiums" in other areas of insurance—*i.e.*, automobile, life, and home insurance. On the basis of these cases, they argue that insurers may not retain premiums covering periods in which they were not exposed to risk. In essence, they ask us to establish and apply a new (and potentially broad) principle to all contracts governed by the NYIL which is that the premium must follow the risk.

We are reluctant to go down this path. These cases, which involve very different areas of insurance law, do not meaningfully address, let alone resolve, the issues that are dispositive of this appeal. They do, however, highlight the dearth of New York authority on the question we confront and, for that matter, the dearth of authority on nearly every aspect of New York bail bond law.[7]

---

[7] For example, it appears no New York appellate court has ever analyzed (or even cited) NYIL § 6804. Further, there is noticeably scant appellate authority discussing bail bond premiums at all and that which does is of no assistance here. *See, e.g.,* *Johnson-Roberts v. Ira Judelson Bail Bonds*, 140 A.D.3d 509, 510 (1st Dep't 2016) (affirming default judgment against defendant bailbondsman because "[a]lthough execution of the bond is a condition precedent for retaining a premium payment, defendants failed

As noted, the district court, in entering judgment for Judelson, relied exclusively on common law contract principles. To do so, however, it necessarily (albeit impliedly) determined that New York law allows for a bail bond agent to retain a premium where a bond it posted was rejected by the court.[8] We are reluctant to resolve this unsettled, significant, and potentially recurrent issue of New York law without the assistance of the New York Court of Appeals.

**CERTIFICATION**

Rule 27.2(a) of our Local Rules provides that: "If state law permits, the court may certify a question of state law to that state's highest court." New York law permits us to certify questions pursuant to § 500.27(a) of the New York Rules of Court: "Whenever it appears to . . . any United States Court of Appeals . . . that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals."[9]

"'Before certifying such a question, we must answer three others: (1) whether the New York Court of Appeals has addressed the issue and, if not, whether decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether

---

to present any documentary evidence that they had actually executed and posted any bond").

[8] We take no issue with the reasoned approach of the district court, which did not have, as we do, the option of certification. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (noting that the "district court did not have the ability to ask the New York Court of Appeals for guidance").

[9] Article VI § 3(b)(9) of New York's Constitution confers the power to make this rule.

the certified question is determinative of a claim before us.'" *In re Santiago-Monteverde*, 747 F.3d 153, 158 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 225 (2d Cir. 2013)). We answer each of these questions in favor of certification.

*First*, no New York court has addressed whether the denial of a bail package following a sufficiency hearing means that no premium was "earned" by the bail bond agency. There are no analogous decisions that would allow us to predict how the Court of Appeals would resolve this question and there are virtually no decisions of the Court of Appeals or the Appellate Divisions bearing even generally on the premiums earned by bail bond agencies.

*Second*, this issue is "of importance to the state" and "require[s] value judgments and public policy choices." *In re Santiago-Monteverde*, 747 F.3d at 158. The state's interest in regulating the premiums to be received by bail bond agents is clear. NYIL § 6804(a) was intended by the Legislature to secure compensation for bail bond agents and to protect defendants and their families at a critical juncture in criminal proceedings. The proper balance between these competing interests is best struck by the Court of Appeals.

*Third*, the resolution of this question will determine the outcome of this appeal. If New York law does not permit a bail bond agent to retain its premium following the rejection of a bail package at a sufficiency hearing, the district court would be reversed. If New York law has no such prohibition, the question becomes simply one of contract interpretation for this Court.

## CONCLUSION

The following question is hereby certified to the Court of Appeals of the State of New York pursuant to 2d Cir. Local R. 27.2 and § 500.27(a) of the New York Rules of Court:

> Whether an entity engaged in the "bail business," as defined in NYIL § 6801(a)(1), may retain its "premium or compensation," as described in NYIL § 6804(a), where a bond posted pursuant to NYCPL § 520.20 is denied at a bail-sufficiency hearing conducted pursuant to NYCPL § 520.30, and the criminal defendant that is the subject of the bond is never admitted to bail.

In formulating this certified question, "we do not mean to limit the Court of Appeals to a narrow response. The certified question may be deemed expanded to cover any pertinent further issue that the Court of Appeals chooses to explain." *Rosner v. Metro. Prop. and Liability Ins. Co.*, 236 F.3d 96, 104 (2d Cir. 2000); *see also In re Santiago-Monteverde*, 747 F.3d at 159 (the Court of Appeals "may reformulate or expand the certified question as it deems appropriate").

It is hereby ORDERED that the Clerk of Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate together with a complete set of briefs, appendices, and the record filed by the parties in this Court. This panel will retain jurisdiction of the present appeal for resolution after disposition of the certified question by the New York Court of Appeals or once that court declines to accept certification.